**UNITED STATES of America,**
**Appellee,**

**v.**

**Asha PATTERSON, Defendant–**
**Appellant.**

**Nos. 04–4324, 04–4325.**

United States Court of Appeals,
Second Circuit.

June 15, 2005.

B. Alan Seidler, New York, NY, for Appellant.

Colleen Kavanagh, Assistant United States Attorney for the Eastern District of New York (Roslynn R. Mauskopf, United States Attorney, Susan Corkery, Assistant United States Attorney), Brooklyn, New York, for Appellee, of counsel.

PRESENT: FEINBERG, CARDAMONE, and SACK, Circuit Judges.

## SUMMARY ORDER

In two cases that this Court heard in tandem, the defendant-appellant, Asha Patterson, appeals from two judgments of the United States District Court for the Eastern District of New York: 1) a July 28, 2004, judgment convicting Patterson, pursuant to a jury verdict, on one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and one count of making false statements to a federal probation officer, in violation of 18 U.S.C. § 1001(a)(2), and sentencing him principally to a total of seventy-eight months' imprisonment (No. 04–4324); and 2) a July 28, 2004, judgment convicting Patterson of violating the terms of his supervised release and sentencing him principally to ten months' imprisonment, to run consecutively to the seventy-eight months imposed for his separate criminal conviction (No. 04–4325). Patterson appeals as to his criminal conviction and sentence, and appeals as to his conviction—but not his sentence—for the supervised release violation.

As to the criminal case, Patterson argues that his conviction should be overturned because (1) the judge erred in denying him a suppression hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), and in not suppressing evidence obtained as a result of the search of his car and storage units; (2) the proceedings violated the Speedy Trial Act; and (3) the evidence presented was insufficient to support a conviction as to the first count. Regarding his sentence, Patterson (1) challenges the constitutionality of the Sentencing Guidelines in light of *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004)—in particular, the district court's judicial fact-finding in connection with sentencing enhancements; (2) claims that the court erred in sentencing him to sixty months' imprisonment on Count Two because it erroneously grouped the two counts; and (3) argues that the court abused its discretion by failing to depart downward based on his family circumstances. As to his conviction for violating the terms of his supervised release, Patterson argues that the delay in holding the revocation hearing violated Fed.R.Crim.P. 32.1 and his constitutional due process rights.

*Criminal Conviction*

*Standards of Review*

We review the legal questions involved in a motion to suppress *de novo*, and accept the district court's factual determinations, absent clear error, "view[ing] those facts in the light most favorable to the government." *United States v. Casado*, 303 F.3d 440, 443 (2d Cir.2002). Thus, in the context of a challenge to an affidavit supporting a search warrant, we review *de novo* whether the untainted elements of the affidavit were sufficient to find probable cause, *United States v. Awadallah*, 349 F.3d 42, 65 (2d Cir.2003), *cert. denied*, —— U.S. ——, 125 S.Ct. 861, 160 L.Ed.2d 781 (2005), and review for clear error determinations of whether, in making certain statements in the affidavit, a person acted with deliberate or reckless disregard for the truth, *id.* As for speedy trial issues, we review legal questions *de novo* and factual findings for clear error. *United States v. Gaskin*, 364 F.3d 438, 450 (2d Cir.2004), *cert. denied*, —— U.S. ——, 125 S.Ct. 1878, 161 L.Ed.2d 751 (2005). Regarding sufficiency of the evidence, "[w]e review such challenges *de novo*," viewing the evidence as a whole and in the light most favorable to the government, and deferring to credibility assessments by the

jury. *United States v. Jones,* 393 F.3d 107, 111 (2d Cir.2004).

*Suppression Hearing*

 Affidavits supporting search warrants are presumed to be valid. *See Franks v. Delaware,* 438 U.S. 154, 171, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). But a defendant is entitled to a hearing regarding the truthfulness of the factual statements made in an affidavit supporting a request for a search warrant if he or she meets a two-part test: 1) "the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit," *id.* at 155–56, 98 S.Ct. 2674, and 2) the allegedly false statement is "necessary to the finding of probable cause," *id.* at 156, 98 S.Ct. 2674. "If, after setting aside the allegedly misleading statements or omissions, the affidavit, nonetheless, presents sufficient information to support a finding of probable cause, the district court need not conduct a *Franks* hearing." *United States v. Salameh,* 152 F.3d 88, 113 (2d Cir.1998), *cert. denied sub nom. Abouhalima v. United States,* 525 U.S. 1112, 119 S.Ct. 885, 142 L.Ed.2d 785 (1999); *see also United States v. Pitera,* 5 F.3d 624, 627 (2d Cir.1993), *cert. denied,* 510 U.S. 1131, 114 S.Ct. 1103, 127 L.Ed.2d 415 (1994).

While on federal supervised release for a previous unrelated crime, Patterson was arrested by the New York Police Department (N.Y.PD) for weapons possession, forgery, and possession of stolen property. Based in part on that state arrest, Patterson's federal probation officer, Amy Roy, later secured an arrest warrant for Patterson for violating the terms of his supervised release, including by committing other crimes. During a search of Patterson pursuant to his arrest, officers found car keys and a receipt for a storage unit rent-al. The keys belonged to a car which was found on the street; it was registered to Patterson at an Alabama address and had been purchased largely with cash. Roy sought and obtained a search warrant for the car and for the storage unit, to search for "evidence, fruits, and/or instrumentalities" of crimes in violation of 18 U.S.C. § 3583(e) (violation of supervised release), as well as of 18 U.S.C. § 922(g)(1) (felon in possession of firearm) and 21 U.S.C. § 841(a)(1) (manufacturing, distribution, or possession of narcotics). Roy's affidavit in support of the warrant contained statements relating to Patterson's state arrest, the discovery of the car keys and the storage receipt, Patterson's purchase of the car with cash despite his limited employment history, and information gleaned from interviews with staff at the storage rental company who observed Patterson unloading numerous new-looking boxes that seemed to contain computers. In particular, regarding the state arrest, Roy correctly stated the charges for which Patterson was ultimately arrested, but also stated that the NYPD had obtained a state search warrant based on a tip from a confidential informant that Patterson was selling guns and drugs. This latter characterization of the confidential informant's statements was incorrect; the informant apparently stated only that Patterson had a gun.

The court found that the second prong of the *Franks* test was not met because any false information that might have been in the affidavit was not material to the existence of probable cause. The court thus declined to hold a suppression hearing or to dismiss the indictment. Furthermore, after a hearing at which Roy testified that she had not looked at the state search warrant or the NYPD officer's supporting affidavit, nor spoken with the confidential informant, but rather had relied

on statements made to her by the officer and an assistant district attorney, the court concluded that Roy had not, contrary to what the court initially thought, intentionally or recklessly mischaracterized the informant's statements.

We agree with the district court's conclusion that a suppression hearing was unwarranted. First, the court's determination as to Roy's intent is not clearly erroneous. Second, the court correctly found that the false statements were not material. In addition to the information about the confidential informant's tip, the affidavit included a correct statement of the charges underlying Patterson's state arrest, as well as evidence linking Patterson to trips outside the jurisdiction, ownership of a vehicle—which was purchased with cash despite his sporadic employment history—and rental of a storage unit. Taking all of this information together, without reference to the false statements about the confidential informant's tip, there was sufficient evidence to support probable cause to search the car and storage unit for "evidence, fruits, and/or instrumentalities" of violations of supervised release, including committing new crimes, leaving New York, and failing to report information to his Probation Officer as required.

*Speedy Trial Act*

■ "Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges," 18 U.S.C. § 3161(b) (with certain excusable delays allowed under 18 U.S.C. § 3161(h)). "If, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment or information is filed within the time limit required by section 3161(b) ... *such charge against that indi-vidual contained in such complaint* shall be dismissed or otherwise dropped." 18 U.S.C. § 3162(a)(1) (emphasis added). This Court, like other Circuits, has read the dismissal remedy provided by 18 U.S.C. § 3162(a)(1) narrowly. *See United States v. Gaskin,* 364 F.3d 438, 451–52 (2d Cir.2004), *cert. denied,* —— U.S. ——, 125 S.Ct. 1878, 161 L.Ed.2d 751 (2005). Thus, "courts will not dismiss an untimely indictment pursuant to § 3162(a)(1) if it pleads different charges from those in the complaint, and this applies even if the indictment charges 'arise from the same criminal episode as those specified in the original complaint or were known or reasonably should have been known at the time of the complaint.'" *Id.* at 451 (quoting *United States v. Napolitano,* 761 F.2d 135, 137 (2d Cir.1985)).

■ Patterson was arrested on February 5, 2003, and held for supervised release violations, including: committing other crimes for which he was arrested by state authorities; leaving the judicial district without permission; failing to submit truthful and complete monthly reports; and failing to report law enforcement contacts. A supplemental report issued on February 13, 2003, set forth additional violations, including an allegation, based on the discovery of the firearm in the car purchased by Patterson, that Patterson had violated the condition that he not commit another crime. On June 20, 2003, Patterson was charged with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). The November 6, 2003, superseding indictment for which Patterson ultimately stood trial charged a felon-in-possession-of-a-firearm offense as well as making false statements to a probation officer in violation of 18 U.S.C. § 1001(a)(2). While the indictment charges arose from some of the same facts as some of the supervised release violations, they constitute separate offenses from the charge of violating supervised

release conditions. Thus, as the district court correctly pointed out, because these criminal offenses were not formally charged until the indictment itself was handed down, and because Patterson was not arrested on these charges, the speedy trial clock did not start running as to those charges until the indictment was filed. As for Patterson's brief contention that his due process rights were violated by the pre-indictment delay, he provides no basis whatsoever for his claim that he was actually prejudiced by the delay; furthermore, there is no indication that the prosecution used the delay to gain a tactical advantage over him. *See United States v. Marion*, 404 U.S. 307, 324, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971).

*Sufficiency of the Evidence*

■ "A defendant who challenges the sufficiency of the evidence [supporting his or her conviction] is faced with a formidable burden." *United States v. Podlog*, 35 F.3d 699, 705 (2d Cir.1994), *cert. denied*, 513 U.S. 1135, 115 S.Ct. 954, 130 L.Ed.2d 897 (1995). In assessing such a claim, "[t]he pieces of evidence must be viewed in conjunction, not in isolation, with every inference drawn in the Government's favor." *Id.* (citations omitted). We "will affirm if, viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Jones*, 393 F.3d 107, 111 (2d Cir.2004) (internal quotation marks and citations omitted). Furthermore, "we defer to a jury's assessments with respect to credibility, conflicting testimony, and ... competing inferences that can be drawn from the evidence ... whether the evidence being reviewed is direct or circumstantial." *Id.* (internal quotation marks and citations omitted); *see also United States v. Martinez*, 54 F.3d 1040, 1042–43 (2d Cir.), *cert. denied*, 516 U.S. 1001, 116 S.Ct. 545, 133

L.Ed.2d 448 (1995). Indeed, "the jury's verdict may be based on circumstantial evidence." *United States v. D'Amato*, 39 F.3d 1249, 1256 (2d Cir.1994).

After obtaining a search warrant for Patterson's car, the probation officer discovered that the car had been moved from its previous location; it was found in front of the home of Patterson's friend Darwin Honore. When Honore approached the car, officers searched it and found a loaded semiautomatic firearm in a compartment behind the driver's seat, as well as airline tickets and credit card receipts showing that Patterson had traveled to Alabama and made purchases there. At trial, Honore testified that, at Patterson's request, he had gotten a second set of car keys from Patterson's sister, moved the car, and removed some items (such as a jacket and a cellular phone) from the front seat and glove compartment; he also testified that he did not know the car had compartments in the back seat of the car.

Patterson argues that there was insufficient evidence to support the jury's finding that he was guilty of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), because: the gun was found a day after he was arrested; Darwin Honore had control over the car after Patterson's arrest; and no fingerprints were found on the gun. "To sustain a conviction under section 922(g), the government need not prove that [the defendant] physically possessed the firearm; rather, proof of constructive possession is sufficient. Constructive possession exists when a person has the power and intention to exercise dominion and control over an object." *United States v. Dhinsa*, 243 F.3d 635, 676 (2d Cir.2001) (internal quotation marks and citations omitted), *cert. denied*, 534 U.S. 897, 122 S.Ct. 219, 151 L.Ed.2d 156 (2001). In determining whether a defendant had constructive possession of a firearm, "courts examine, *inter alia*, whether

the defendant exercised dominion and control over the premises in which the firearms are located." *Id.* (internal quotation marks and citation omitted). "Mere proximity or presence is ... insufficient to support a finding of constructive possession." *United States v. Rodriguez*, 392 F.3d 539, 548 (2d Cir.2004). Furthermore, "[t]he government may establish constructive possession through direct or circumstantial evidence," and "[i]t is of no moment that other individuals also may have exercised control over the weapons." *Dhinsa*, 243 F.3d at 677. The district court's instructions explained these principles to the jury. Viewed as a whole, the evidence—including the fact that the car was purchased by and registered to Patterson and that it contained some items linking it to Patterson (including the airline tickets and receipts), Honore's testimony that he simply moved the car at Patterson's request and removed some items from the front, while unaware of a rear compartment, and the expert witness's testimony that it is rare to recover usable fingerprints from firearms—was sufficient to support the jury's finding that Patterson had constructive possession of the firearm located in the car.

*Supervised Release Violation Conviction*

█ As to his conviction for violating the terms of his supervised release, Patterson argues that he was a denied a "speedy disposition" of the matter, in violation of Fed.R.Crim.P. 32.1 and his due process rights. "Unless waived by the person, the court must hold [a] revocation hearing [for a person in custody for violating a condition of supervised release] within a *reasonable time* in the district having jurisdiction." Fed.R.Crim.P. 32.1(b)(2) (emphasis added).

There are three relevant time-periods at issue here: 1) that between Patterson's February 5, 2003, arrest for supervised release violations and the indictment is-

sued on June 20, 2003, for his violation of 18 U.S.C. § 922(g); 2) that between the issuance of the indictment (which was then superseded by an indictment issued in November 2003) and the trial as to those charges on December 2–3, 2003; and 3) that between December 3, 2003, when the jury verdict was returned, and the ultimate revocation hearing and adjudication of the supervised release violations on July 23, 2004. As to the time before the filing of the first indictment, the government explained to the district court, and Patterson did not specifically dispute, that the delay had been due to changes in Patterson's counsel, a chickenpox outbreak and ensuing quarantine at Patterson's detention facility, and pre-indictment negotiations. After the first indictment was issued on June 20, 2003, the court adjourned the revocation hearing until the new charges as set forth in the indictment were resolved. Inasmuch as Patterson's conviction on at least one of the indictment counts ultimately served as a primary basis for the district court's determination that Patterson violated the terms of his supervised release by committing a new crime, it was reasonable for the court to await the resolution of these charges before holding the revocation hearing. Finally, as to the third period, the record is sparse, but the delay appears to have been reasonable: it seems to have been due in part to Patterson's change of counsel and his filing of a *pro se* motion concerning the speedy trial issue as to his federal criminal case, combined with a subsequent one-month adjournment for sentencing in that case, and a reasonable decision to hold the revocation hearing and relevant sentencing proceedings at the same time as the sentencing proceedings as to the new criminal conviction. Thus, the timing of the revocation hearing did not violate Fed.R.Crim.P. 32.1(b)(2).

█ Patterson's due process rights were also not violated by the delay in holding

the revocation hearing. "[A] delay between the filing of the petition for a warrant, pursuant to an alleged violation of supervised release, and the execution of the warrant can ... result in a due process violation ... if the delay ... prejudice[s] the defendant by substantially limiting the ability to defend against the charge that the conditions of supervised release were violated." *United States v. Ramos*, 401 F.3d 111, 116 (2d Cir.2005). So too, it seems, a delay in holding a revocation hearing after the releasee has been arrested for supervised release violations could violate the releasee's due process rights if it prejudiced him or her in this way. But there is no indication in this case that Patterson suffered any such prejudice.

*Sentencing as to Criminal Offenses*

■ This case involves both a Sixth Amendment error, resulting from the two-point enhancement of Patterson's offense level pursuant to U.S.S.G. § 2K2.1(b)(4) on the ground, as found by the court, that the firearm was stolen, *see United States v. Booker*, — U.S. ——, ——, 125 S.Ct. 738, 756, 160 L.Ed.2d 621 (2005), and a "procedural" or statutory error insofar as the court "mandatorily appl[ied] the applicable Guidelines range ... under the now-excised requirement of [18 U.S.C. § ] 3553(b)(1)." *United States v. Crosby*, 397 F.3d 103, 114 (2d Cir.2005); *see United States v. Fagans*, 406 F.3d 138, 141 n. 1 (2d Cir.2005). Although the court specifically noted that it would impose the same sentence "under both the guidelines and an indeterminate sentencing scheme," this does not mean that a remand concerning sentencing is inappropriate, *see Crosby*, 397 F.3d at 118. Because Patterson raised an objection to his sentencing before the district court, arguing that *Blakely* applied to the federal Guidelines, he has preserved the objection to the error; therefore, as both parties agreed at oral argument, this case should be remanded to the district court for resentencing. *See Fagans*, 406 F.3d at 141.

We note, however, that Patterson's claim that the district court erred in sentencing him to sixty months on Count Two of the superseding indictment is without merit. Contrary to Patterson's claim, there is no indication that the court grouped the two counts for sentencing purposes under U.S.S.G. § 3D1.2. Rather, the court found that the total offense level for Count One (being a felon in possession of a firearm) was 22. Pursuant to U.S.S.G. § 3D1.4, because the total adjusted offense level for Count Two was 6—i.e., nine levels less serious than the offense level of Count One—it was not counted in the calculation of the "combined offense level," which was therefore 22. A combined offense level of 22 and a Criminal History Category of IV yielded a sentencing range of 63 to 78 months. Consistently with U.S.S.G. § 5G1.2, Patterson was sentenced to a total term of imprisonment of 78 months, with concurrent sentences of 78 months as to Count One and 60 months as to Count Two (which is the statutory maximum for the latter offense, *see* 18 U.S.C. § 1001(a)(2)). Thus, the district court did not err in sentencing Patterson to a concurrent sentence of 60 months as to Count Two, with a total punishment of 78 months.

Finally, regarding Patterson's appeal as to the district court's denial of his application for a downward sentencing departure based on his family circumstances, such a denial is, under current Circuit law, generally not reviewable on appeal unless the case fits within certain narrow exceptions, *see, e.g., United States v. Scott*, 387 F.3d 139, 143 (2d Cir.2004), none of which are present here. Furthermore, this case is not an appropriate one in which to address the question of whether the defendant's requested abuse of discretion review is

more appropriate in light of *Booker.* Even under such a standard, we would affirm the district court's denial of the defendant's request because, despite the sad circumstances presented, we cannot say that the district court abused its discretion in denying Patterson a departure where his children have an adequate alternative caretaker—Patterson's ex-girlfriend, who is the mother of one of the children—and where Patterson has not proven himself to be a positive influence in his children's life.

For the foregoing reasons, the judgment of the District Court is hereby AFFIRMED as to both convictions and as to the sentence for supervised release violations and VACATED AND REMANDED for resentencing as to the criminal sentence.