UNITED STATES of America

v.

Donahue DEWAR, a/k/a "Blood," Charles Ernest Dewar, a/k/a "Trooper," and Sharon King, Defendants.

No. 06 Cr. 311(SCR).

United States District Court, S.D. New York.

June 4, 2007.

**354**

Richard Willstatter, Green & Willstatter, White Plains, NY, for Charles Ernest Dewar.

Michael Scott Bosworth, United States Attorney, Southern District New York, New York, NY, for United States of America.

## DECISION AND ORDER

ROBINSON, District Judge.

Defendants Donahue Dewar, Charles Ernest Dewar, and Sharon King (collectively the "Defendants") are charged with a conspiracy to possess with intent to distribute narcotics, as well as other substantive narcotics offenses. Donahue Dewar and Sharon King are also charged with a firearms offense in connection with the narcotics charges. Defendants filed various pre-trial motions for suppression of evidence and discovery, and requested evidentiary hearings to address certain of these issues.[1]

## I. Requests for discovery

### A. Rule 16 disclosures

Defendants request that this Court direct the Government to provide all materials that must be supplied to Defendants under Rule 16 of the Federal Rules of Criminal Procedure, including, but not limited to, oral statements made by the Defendants, all documents which the Government intends to use at trial, and all relevant reports of any physical or mental examination and of any scientific test or experiment. In their motion papers, Defendants do acknowledge that the Government has already supplied a substantial volume of material, and "may have complied with its obligations pursuant to Rule 16." D. Dewar Motion at ¶ 17. In addition, Defendants request certain discovery under the guise of Rule 16 of documents and/or other information that the Government is not required to produce under Rule 16. For example, in Donahue Dewar's Motion at ¶ 17(C), Defendants request information concerning oral statements which were not given in response to interrogation by a person the Defendants knew was a government agent.

In its papers, the Government represents, in sum and substance, that it has already complied with its discovery obligations pursuant to Rule 16, and Defendants' own motion papers confirm this statement. Many of Defendants' specific requests for documents, therefore, are moot, as the documents have already been provided. The Government is well-acquainted with its Rule 16 obligations, including its obligation under Rule 16(c) to provide additional discovery if and when it becomes available. This Court has no rea-

---

1. Both Donahue Dewar and Charles Dewar specifically request to join in all other motions made by counsel for their co-defendants, to the extent applicable. The Court will therefore address all motions as though they were made collectively by all Defendants, where appropriate.

son to believe that the Government has not acted reasonably and in good faith to comply with its Rule 16 obligations to date and will continue to do so, and is satisfied with the Government's representations. *See United States v. De La Cruz,* No. 05 Cr. 773(NRB), 2006 WL 2322692, *2, 2006 U.S. Dist. LEXIS 55725, *8 (S.D.N.Y. Aug. 8, 2006). Accordingly, Defendants' request for an order directing the Government to comply with its Rule 16 discovery obligations is DENIED. To the extent that Defendants' request discovery under Rule 16 of any materials that are not specifically provided for under Rule 16, those requests are also DENIED.[2]

### B. Early production of Rule 404(b) material

■ Defendants request disclosure of evidence the government will seek to admit under Federal Rule of Evidence 404(b). Rule 404(b) itself only requires that the Government provide "reasonable notice in advance of trial" for the admission of prior convictions and bad acts as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. The rule establishes no minimum time, however, because "the evidence the government wishes to offer may well change as the proof and possible defenses crystallize." *United States v. Matos–Peralta,* 691 F.Supp. 780, 791 (S.D.N.Y.1988). The Government acknowledged its obligations under Rule 404(b), and indicated that it intends to provide notice of any 404(b) evidence it might seek to introduce at least 10 working days before the beginning of trial. The Second Circuit has held that disclosure with even less advance notice than this can still be reasonable under Rule 404(b). *See, e.g., United States v.*

*Valenti,* 60 F.3d 941, 945 (2d Cir.1995). There is therefore no need to issue the order Defendants seek. *See United States v. Ramirez,* No. 91 Cr. 493(KMW), 1991 WL 177239, *2, 1991 U.S. Dist. LEXIS 12183, *4 (S.D.N.Y. Aug. 30, 1991) ("the Government has represented that it will provide timely notice of any intent to introduce [404(b) ] evidence so that there is no need to issue the order defendant seeks"). Defendants' motion for early disclosure of Rule 404(b) material is therefore DENIED.

### C. Early production of *Brady, Giglio* and Jencks Act material

#### i. *Brady* material

■ Defendants seek to have the Government provide early production of material evidence as to guilt or punishment that is favorable to the accused, including evidence that tends to exculpate the Defendants. *See Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Such materials must be disclosed "no later than the point at which a reasonable probability will exist that the outcome would have been different if an earlier disclosure had been made." *United States v. Coppa (In re United States),* 267 F.3d 132, 142 (2d Cir.2001). Thus, due process requires only that *Brady* material be disclosed "in time for effective use at trial." *Id.* (citing cases). Here, the Government has represented that currently it is not aware of any *Brady* material in this case, but that it recognizes its continuing obligation to disclose all such material. As the Government has, in good-faith, asserted that it has met, and will continue to meet its obligations, there is no reason to compel disclosure of *Brady* material at this time. *See United States v. Perez,* 940 F.Supp. 540, 553 (S.D.N.Y.1996); *United*

---

**2.** These rulings do not preclude Defendants from filing future motions to the extent there

are *specific* discovery issues that have not been addressed adequately.

*States v. Schwimmer*, 649 F.Supp. 544, 549 (E.D.N.Y.1986). Defendants' request for early production of *Brady* material is therefore DENIED.

### ii. *Giglio* material

■ Defendants also seek early production of evidence that may be used to impeach the credibility of any of the Government's witnesses pursuant to *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763 (1972). Again, the Government is only required to produce *Giglio* material "in time for effective use at trial." *Perez*, 940 F.Supp. at 553. Here, the Government, in good faith, has represented that it intends to produce *Giglio* material the day before the corresponding witness will testify, or, if additional time is reasonably required to review such material, sufficiently in advance of the witness's testimony so as to avoid any delay at trial. At the time of those disclosures, to the extent that Defendants feel that additional time is necessary given the volume or complexity of the materials provided, the Court will consider applications to continue or recall witnesses. It is unnecessary, however, to order early disclosure at this time. Defendants' motion for early production of *Giglio* material is therefore DENIED.

### iii. Jencks Act material

■ Defendants also seek the production of prior statements made by prospective Government witnesses pursuant to the Jencks Act. *See* 18 U.S.C. § 3500 *et seq.* As expressed in the text of the statute, however, the Government is under no obligation to produce Jencks Act material until after a witness has testified on direct examination at trial. District courts lack the authority to compel early disclosure of Jencks Act material. *In re United States*, 834 F.2d 283, 287 (2d Cir.1987). Further, the Government, in good faith, has repre-

sented that it intends to produce Jencks Act material at the same time as impeachment material under *Giglio*—that is, the day before the corresponding witness will testify, or, if additional time is reasonably required to review such material, sufficiently in advance of the witness's testimony so as to avoid any delay at trial. Again, to the extent that Defendants feel that additional time is necessary given the volume or complexity of the materials provided, the Court will consider applications to continue or recall witnesses. It is unnecessary, however, to order early disclosure at this time. Defendants' motion to compel early disclosure of Jencks Act material is therefore DENIED.

### D. Witness list

■ Defendants request that the Government be directed to provide a list of the names and addresses of all witnesses that the Government intends to call as part of its case in chief. The Second Circuit has held, however, that "in the absence of a specific showing that disclosure [of a witness list] was both material to the preparation of [the] defense and reasonable in light of the circumstances surrounding [the] case," the request for a witness list should be denied. *United States v. Bejasa*, 904 F.2d 137, 139–40 (2d Cir.1990); *United States v. James*, No. 02 Cr. 778(SJ), 2005 U.S. Dist. LEXIS 40695, *17 (E.D.N.Y. Dec. 6.2005) ("generally the Second Circuit has held that such material will be ordered disclosed to the defense only where there has been a particularized showing of need"). Defendants here make no particularized showing that the requested witness list is material to the preparation of the defense—indeed, Defendants make no argument whatsoever for why they should receive the witness list any earlier than the ordinary schedule for such disclosures would provide. Accordingly,

Defendants' motion for early disclosure of the Government's witness list is DENIED.

### E. Informant-related information

■ Defendants seek a ruling requiring the Government to disclose information about confidential informants whom they believe the Government will rely on at trial so that Defendants may investigate and interview the informants as part of their trial preparation. Based on the indictment and search warrant affidavits, Defendants believe that the informants are key witnesses and participants in the alleged criminal activities underlying this prosecution. Accordingly, Defendants seek disclosure of the names, dates of birth, criminal records, and present whereabouts of any informants, as well as the names of the informants' attorneys.

■■ In general, the Government may withhold from disclosure the identity of individuals who inform law enforcement officers of violations of the law. *See, e.g., Roviaro v. United States*, 353 U.S. 53, 59, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957); *United States v. Jackson*, 345 F.3d 59, 69 (2d Cir.2003). Where the disclosure of an informant's identity "is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause," *Jackson*, 345 F.3d at 69, the Government's privilege gives way to the Defendants' rights. *See Roviaro*, 353 U.S. at 60–61, 77 S.Ct. 623. This Court is required to balance "the public interest in protecting the flow of information against the individual's right to prepare his defense." *Id.* at 62, 77 S.Ct. 623.

■ The Defendants bear the burden of demonstrating the need for disclosure of an informant's identity, and must show that without such disclosure, they will be deprived of the right to a fair trial. *See, e.g., United States v. Fields*, 113 F.3d 313, 324 (2d Cir.1997). Disclosure of a confidential informant's identity is an "extraordinary remedy," *see United States v. Muyet*, 945 F.Supp. 586, 602 (S.D.N.Y. 1996), and "disclosure of the identity or address of a confidential informant is not required unless the informant's testimony is shown to be material to the defense." *United States v. Saa*, 859 F.2d 1067, 1073 (2d Cir.1988). Defendants must do more than simply allege that the informant was a participant in or witness to the crime charged, or that the informant might cast doubt on the general credibility of a government witness. *Id.* The Second Circuit has stated that "speculation that disclosure of the informant's identity will be of assistance is not sufficient to meet the defendant's burden." *Fields*, 113 F.3d at 324.

At this point, Defendants offer little more than speculation to suggest that any informants that have provided information to the Government in this matter would be of material value to the Defendants' case. Defendants' motion papers declare only that "based on the indictment and search warrant affidavit it appears that the informant in this case is a key witness and participant in the crimes charged" and that one informant was directly involved in the sale and distribution of the controlled substance at issue. Such broad allegations, however, are insufficient to meet Defendants' burden—at best, these statements constitute a level of speculation that, absent more, does not warrant disclosure of the identity of informants. Accordingly, Defendants' motion for disclosure of information regarding any confidential informants is DENIED.

### F. Reciprocal discovery for the Government

The Government has requested that this Court issue an order directing Defendants to provide certain items of reciprocal discovery pursuant to Rule 16(b). Though

Defendants have not made any specific statements indicating their awareness of their reciprocal Rule 16(b) obligations, it is the experience of this Court that Defendants' counsel are well-acquainted with their Rule 16 duties. Accordingly, the Government's request for an order directing Defendants to comply with their Rule 16 discovery obligations is DENIED at this time Similarly, it is this Court's experience that Defendants' counsel are well acquainted with their obligations under Rules 12.2 and 12.3; thus, the Government's request for an order directing the Defendants to provide the mandated notices specified in those rules is also DENIED.

Finally, Pursuant to Rule 26.2, the Government requests the Defendants be ordered to disclose prior statements of the witnesses it will call to testify, on the same basis upon which the Government will supply the Defendants with material relating to Government witnesses under 18 U.S.C. § 3500; this motion is GRANTED.

## II. Motions relating to the August 28, 2005 vehicle stop and search, and the arrests of D. Dewar and C. Dewar

▇ Defendants request an evidentiary hearing to determine whether the Harrison Police Department's warrantless stop of a vehicle in which Defendants Donahue and Charles Dewar were traveling on August 28, 2005, and the subsequent arrests of Donahue and Charles Dewar, were lawful. The Government initially agreed that an evidentiary hearing was necessary to resolve these issues, but later revised its position and now argues that a hearing is not necessary because the material facts surrounding the stop and subsequent arrests are not in dispute.

### A. Facts

On August 27, 2005, Sergeant Edward Lucas ("Lucas") of the Harison Police Department submitted an affidavit to Judge William Edwards ("Judge Edwards") of the Mount Vernon City Court in support of an order of search and seizure for an individual known as "Blood," an individual known as "Sharon" and believed to be Sharon King. their apartment located on the first floor and basement of 3443 Mickle Avenue in the Bronx, New York, and a green 2004 Toyota Sequoia. Lucas Warrant Aff. at 1. The affidavit was based in large part on information provided by a confidential informant (the "CI") who, according to Lucas, reported that he had purchased cocaine from "Sharon" and "Blood" in the past, *see* Lucas 11/28/06 Aff. at ¶ 2, and that "Sharon" and/or "Blood" would be willing to sell the CI approximately four kilograms of cocaine on any day. *See* Lucas Warrant Aff. at 2. Lucas also described a series of recorded telephone conversations from August 2005 between the CI and "Sharon" and "Blood" regarding planned narcotics transactions. *See* Lucas Warrant Aff. at 3.

Based on Lucas's affidavit, Judge Edwards signed a warrant on August 27, 2005 authorizing the Harrison Police Department and the New York City Police Department to search an apartment located on the first floor and basement of 3443 Mickle Avenue in the Bronx, New York, and the same 2004 Toyota Sequoia specified in Lucas's affidavit. The warrant did not provide for the search or seizure of the two individuals described in Lucas'.; affidavit, or any other vehicles or locations.

On August 28, 2005 at approximately 11:35 a.m., the CI made a recorded phone call to "Blood" to plan a transaction involving three kilograms of cocaine; the CI subsequently made a second recorded call to "Blood" at approximately 12:02 p.m. to

arrange for the transaction to occur in the vicinity of a certain store at a shopping center located near the intersection of Boston Post Road and Pelham Parkway in Pelham Manor, New York. Lucas 11/28/06 Aff. at ¶ 4. At approximately 3:10 p.m., officers with the Harrison Police Department observed Donahue Dewar and Charles Dewar leave 3443 Mickle Avenue, a location that had been under surveillance by law enforcement officers for several hours. Lucas 11/28/06 Aff. at ¶ 5. At the time, officers observed Charles Dewar carrying a white plastic bag and then entering the front passenger seat of a blue Lexus; Donahue Dewar was observed entering the driver's seat of the vehicle. *Id.* The Harrison police officers proceeded to follow the blue Lexus from 3443 Mickle Avenue to the vicinity of the intersection of Boston Post Road and Pelham Parkway; at that time, the officers stopped the vehicle, removed Donahue and Charles Dewar, and handcuffed them. Lucas 11/28/06 Aff. at ¶ 6. This stop was not made pursuant to a warrant, nor has any witness for the Government suggested that the stop was made as a result of any traffic violation. Following the stop, the officers searched the Lexus, from which they retrieved, from near the front passenger seat, the white plastic bag they had observed Charles Dewar carrying outside of 3443 Mickle Avenue. *Id.* Tests later revealed that the bag contained approximately three kilograms of cocaine. *Id.*

Later that day, officers with the New York City Police Department executed the August 27, 2005 warrant at 3443 Mickle Avenue, where they found one additional kilogram of cocaine, four loaded firearms, approximately $70,000 in cash, and other property including electronics and jewelry.

Sharon King was arrested around the time of that search.

## B. Discussion
### i. Evidentiary hearing

Defendants are not entitled to an evidentiary hearing unless they can show that there is a contested issue of material fact with respect to the issue for which the hearing is requested. *See United States v. Pena,* 961 F.2d 333, 339 (2d Cir.1992). Defendants' moving papers must be "sufficiently definite, specific, detailed, and non-conjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question." *Id.* To create a factual dispute, Defendants must present submit a sworn affidavit from one with personal knowledge of the underlying facts. In the absence of such an affidavit, or when the allegations contained in such an affidavit are general and conclusory, an evidentiary hearing is unnecessary. *See United States v. Shamsideen,* No. 03 Cr. 1313(SCR), 2004 WL 1179305, *9, 2004 U.S. Dist. LEXIS 9560, *31 (S.D.N.Y. Mar. 31, 2004).

In support of their request for an evidentiary hearing, Defendants offer a declaration from Shakira Elliott ("Elliott"), an individual who represented that she listened to the recorded phone conversations referenced above and stated that she did not hear certain words mentioned during those calls.[3] Defendants also submit a declaration from Donahue Dewar which, in sum and substance, confirms that he was driving the blue Lexus as set forth above, but takes issue with the precise location at which the car was ultimately stopped by law enforcement officers. Donahue Dewar makes no representations in his declaration concerning the telephone calls.

---

**3.** Elliott indicates that she only listened to the portions of the recordings she deemed "audi-

ble." Elliott Decl. at ¶ 2.

These two declarations do not establish an issue of material fact such that an evidentiary hearing on this matter is required. Elliott's declaration does not cast doubt upon the substance of the recorded conversations between "Blood" and the CI, and certainly does not suggest that such conversations did not occur. At most, the declaration highlights potential problems with the quality of the recordings and whether the statements made therein are as direct as they could be, but that alone is not enough to create an issue of disputed material fact with regard to the substance of the conversations. Furthermore, Donahue Dewar's declaration does not establish any issue of material fact as to the events that Lucas asserts preceded the stop of the blue Lexus—indeed, the declaration submitted by Donahue Dewar even confirms some of the details set forth by Lucas. The Donahue Dewar declaration does point out an issue with respect to the exact location where the vehicle was stopped—according to Donahue Dewar, the vehicle was stopped farther from the shopping center where the transaction was set to occur than Lucas stated in his declaration. The minor discrepancy between the two stated locations for the stop, however, is not enough to create a material issue as to the lawfulness of the stop as a whole. Nothing submitted by the Defendants contradicts the series of assertions concerning the CI's discussions with Lucas, the substance of the recorded phone conversations, and the observations made by law enforcement officers on August 28, 2005 during the timeframe in which Donahue and Charles Dewar exited 3443 Mickle Avenue and entered the blue Lexus. Defendants make various other arguments as to why the stop of the vehicle was unlawful, but these arguments can and will be addressed by this Court as part of Defendants' motion to suppress—none of the arguments makes the type of factual showing required to entitle Defendants to an evidentiary hearing on the stop of the blue Lexus. Accordingly, Defendants' request for an evidentiary hearing regarding the August 28, 2005 vehicle stop is DENIED.

### ii. Stop of the blue Lexus and arrest of D. Dewar and C. Dewar

■ Defendants maintain that law enforcement officers did not have a sufficient basis to justify the stop of the blue Lexus on August 28, 2005, and that the stop was therefore constitutionally impermissible. It is well established that absent a warrant, "in order to stop a car, the police must have either probable cause or a reasonable suspicion, based on specific and articulable facts, of unlawful conduct." *United States v. Gaines,* 457 F.3d 238, 243 (2d Cir.2006) (internal quotations omitted). Probable cause and reasonable suspicion "are commonsense, non-technical conceptions that deal with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technician;, act, and as such are not readily, or even usefully, reduced to a neat set of legal rules." *Ornelas v. United States,* 517 U.S. 690, 695–96, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). Based on the facts set forth in Lucas's declaration, this Court finds that Harrison police officers had probable cause to stop the blue Lexus on August 28, 2005.

As detailed above, law enforcement officials were in possession of substantial, detailed, and timely information from a CI regarding a planned narcotics transaction on August 28, 2005, including phone calls on that day establishing a time and location for a large narcotics purchase. Officers had every reason to believe the CI was a credible and reliable source—not only did they have recordings of the underlying conversations setting up the drug sale, but they also had received reliable information from the CI as part of a differ-

ent investigation that led to the seizure of narcotics-related materials and a weapon in Queens, New York just days earlier. *See* Lucas Warrant Aff. at 1–2. In addition to the communications involving the CI, Harrison police officers observed Donahue and Charles Dewar emerge from 3443 Mickle Avenue—the same location that Judge Edwards had authorized them to search; specifically, they witnessed Charles Dewar carrying a white plastic bag as he entered the blue Lexus. The officers then followed the blue Lexus, which traveled to the vicinity of the shopping center where the drug transaction was set to occur before it was stopped by the police. All of this information—uncontroverted by Defendants with the exception of the location of the stop, as described above—is more than enough to merit a finding that law enforcement officials had probable cause to stop the blue Lexus on August 28, 2005.

According to Defendants, the stop was unlawful because, among other reasons: (a) the blue Lexus was not specifically described in or covered by the August 27, 2005 warrant signed by Judge Edwards; (b) Donahue and Charles Dewar were not violating any traffic laws; and (c) there was no warrant for the arrest of either Donahue or Charles Dewar. None of these arguments disrupts this Court's finding that there was probable cause to stop the blue Lexus. The Government has not suggested that the stop of the Lexus was in any way premised on the August 27, 2005 warrant signed by Judge Edwards, or on any purported warrant for the arrest of Donahue or Charles Dewar. There is also no attempt by the Government to justify this stop as occasioned by any sort of traffic violation. Rather, the Government asserts and this Court finds, that the Harrison police had sufficient probable cause to stop the blue Lexus occupied by Dona-

hue and Charles Dewar on August 28, 2005 based solely on the facts described above.

This same set of underlying facts also supplied information sufficient to support probable cause to arrest both Donahue and Charles Dewar after the blue Lexus was stopped. The Second Circuit has held that law enforcement officials have probable cause to arrest absent a warrant "when the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Boyd v. City of New York*, 336 F.3d 72, 75–76 (2d Cir.2003). "Probable cause does not require absolute certainty." *Id.* at 76. Even though their application for an arrest warrant for the individual known as "Blood" had been denied the previous day, law enforcement officials were in a materially different position on the afternoon of August 28, 2005 because of the phone calls made earlier in the day by the CI to set up the narcotics transaction. Harrison police officers had a reasonable belief, based on the facts described above, that Donahue and Charles Dewar were driving to the aforementioned shopping mall for the purposes of completing a large narcotics transaction, and had a reasonable belief that those Defendants were in possession of the narcotics that were the subject of that planned transaction. Accordingly, the officers had probable cause to arrest Donahue and Charles Dewar on August 28, 2005.

### iii. Search of the blue Lexus

 Defendants move to suppress the items recovered from the blue Lexus on August 28, 2005—they posit that police officers lacked probable cause to seize evidence following the stop of the vehicle, and further lacked probable cause to open the plastic bag found inside the vehicle without a warrant.

The Supreme Court has long maintained that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *New York v. Belton*, 453 U.S. 454, 460, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). Further, in that type of situation, "the police may also examine the contents of any containers found within the passenger compartment ... whether [the container] is open or closed." *Id.* at 460–61, 101 S.Ct. 2860. The *Belton* Court defined a "container" as "any object capable of holding another object ... [including] closed or open glove compartments, consoles, or other receptacles located anywhere within the passenger compartment, as well as luggage, boxes, bags, clothing, and the like." *Id.* at 461 n. 4, 101 S.Ct. 2860.

As described in section II(B)(ii) above, law enforcement officials had probable cause to arrest Donahue and Charles Dewar after stopping the blue Lexus on August 28, 2005. Consequently, pursuant to *Belton*, the officers were entitled to search the passenger compartment of the blue Lexus at that time incident to the lawful arrest of the two occupants of the vehicle, and were also entitled to examine the contents of the white plastic bag they found therein. Defendants' motion to suppress the search of the Lexus is DENIED.

## III. Search of 3443 Mickle Avenue

Defendants Sharon King and Donahue Dewar move to suppress evidence recovered from 3443 Mickle Avenue on August 28, 2005, pursuant to the search warrant signed by Judge Edwards on August 27, 2005.[4] These Defendants offer at least four separate reasons why this search and seizure should be deemed invalid, but all are without merit—Defendants' motion to suppress this evidence is DENIED.

### A. Probable cause

It is well settled that a valid search warrant may only issue upon probable cause. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). "[T]he probable cause standard simply requires a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before [the magistrate] ..., there is a fair probability that contraband or evidence of a crime will be found in a particular case." *United States v. Martin*, 426 F.3d 83, 86 (2d Cir.2005) (internal quotations and citations omitted). The probable cause standard is a "practical, non-technical conception" based on "factual and practical considerations of everyday life." *Gates*, 462 U.S at 232, 103 S.Ct. 2317. In reviewing a magistrate's probable cause determination, a court must "ensure that the magistrate had a substantial basis for ... [concluding] that probable cause existed," *id.* at 214, 103 S.Ct. 2317 (internal quotations and citations omitted), based on a totality of the circumstances. *Id.* at 233, 103 S.Ct. 2317.

Donahue Dewar suggests that the warrant is defective in part because the warrant application failed to comply with New York Criminal Procedure Law, but his reliance on state law warrant requirements

---

**4.** The Government argues that Donahue Dewar does not have standing to contest the search of Apartment 1 at 3443 Mickle Avenue because he has not put forth facts sufficient to prove that he had a legitimate expectation of privacy at that residence. Because this Court is of the view that the warrant to search Apartment 1 at 3443 Mickle Avenue was supported by probable cause and is not compromised by any of the arguments set forth by Defendants, this Court declines to specifically address the question of Donahue Dewar's standing to object to the search and will treat his motion as though he does have such standing.

is misplaced here. *See United States v. Smith*, 9 F.3d 1007, 1014 (2d Cir.1993) ("the touchstone of a federal court's review of a state search warrant secured by local police officials and employed in a federal prosecution is the Fourth Amendment and its requirements, and no more"). Even King concedes that "where a state judge issues a warrant under state law that is executed by state law enforcement, the warrant is judged by federal law if the fruits of the warrant result in federal charges." *United States v. Pforzheimer*, 826 F.2d 200, 204 (2d Cir.1987).

 Applying these principles, this Court holds that the warrant signed by Judge Edwards for the search of Apartment 1 at 3443 Mickle Avenue, was supported by probable cause. Lucas's affidavit in support of the warrant provided a sufficient basis for Judge Edwards to conclude that evidence of narcotics offenses would be found in Apartment 1 at 3443 Mickle Avenue. According to that affidavit, the CI, who had provided reliable information used in other investigations within days of the application for the instant warrant, informed Lucas in early August 2005 that two people known to the CI as " 'Sharon' and 'Blood' of 3443 Mickle Avenue and who occupy a first floor and basement apartment thereat" had been selling large amounts of cocaine. Lucas Warrant Aff. at 2. Lucas was further told that "Sharon" and/or "Blood" would be "willing to sell a large quantity of cocaine" to the CI. *Id.* While it is unnecessary to go through each and every supporting fact in the affidavit, the Court notes, for example, that in a series of recorded telephone conversations beginning on August 6, 2005, the CI communicated with "Sharon" and "Blood" about acquiring cocaine, and ultimately received a call from "Blood" on August 11, 2005 indicating that he had cocaine and asking if the CI knew anybody

who wanted it. *Id.* at 3. On August 19, 2005, the CI contacted "Blood" and told him he needed four kilograms of cocaine, to which "Blood" responded that he had the drugs, and asked the CI to contact him on August 28. *Id.* Further, on August 20, the CI accompanied Lucas to the Bronx and pointed out 3443 Mickle Avenue as a location where "Blood" and "Sharon" "conducted narcotics business." *Id.* at 4. While it is true, as Defendants point out, that nothing in the affidavit states that the CI observed narcotics inside of Apartment 1 at 3443 Mickle Avenue, the information provided, based on the totality of the circumstances, was more than enough for Judge Edwards reasonably to conclude that there was probable cause to search the premises.

## B. Particularity

 Defendants argue that the warrant lacked particularity because the document described Apartment 1 at 3443 Mickle Avenue as "an apartment located on the first floor and basement of a two-story, brick multi-family, apartment building with a white door," *see* 8/27/05 Warrant at 1, when in fact the apartment is a "split level apartment that contains several levels." King Motion at 2. They also contend that law enforcement officials exceeded the scope of the warrant because they searched both levels of the split-level first floor and recovered items from the upper portion of the first floor of Apartment 1.

 The Second Circuit has described the general rule regarding particularity of search warrants: "it is enough if the description is such that the officers armed with a search warrant can with reasonable effort ascertain and identify the place intended." *Velardi v. Walsh*, 40 F.3d 569, 576 (2d Cir.1994) (internal quotations omitted). "Even a warrant containing partial misdescriptions of the place to be searched

is sufficient if the officer executing the warrant could ascertain and identify the target of the search with no reasonable probability of searching another premises in error." *United States v. Williams,* 69 Fed.Appx. 494, 496 (2d Cir.2003) (internal quotation omitted).

Neither King nor Donahue Dewar allege that the scope of the search went beyond the premises of Apartment 1—instead, they seek to make a hyper-technical distinction between "the first floor" specified in the warrant and what they describe as the "split level first floor" in Apartment 1 at 3443 Mickle Avenue. At most, officers may have searched the second level on the split-level first floor of the specified apartment; in no way does this exceed the bounds of the warrant or otherwise invalidate the search. It is a stretch even to suggest that the warrant contained any misdescriptions of the premises to be searched, but the purported misdescriptions of the precise layout within this subject apartment in the instant warrant certainly did not create any risk that law enforcement officials would search another premises in error. Without question, this warrant allowed officers to identify the place intended with reasonable effort. Accordingly, this Court finds that the warrant at issue was sufficiently particular.

### C. Staleness

 Defendants argue that the information in the warrant affidavit was stale because the affidavit does not contain any specific representation that the CI had actually observed any narcotics or firearms inside of Apartment 1 at 3443 Mickle Avenue. This argument is without merit. Facts in support of an affidavit must be "so closely related to the time of the issue

of the warrant as to justify a finding of probable cause at that time." *United States v. Beltempo,* 675 F.2d 472, 477 (2d Cir.1982). "Whether the proof meets this test must be determined by the circumstances of each case." *Id.* (citing *Sgro v. United States,* 287 U.S. 206, 210–11, 53 S.Ct. 138, 77 L.Ed. 260 (1932)). "[T]he principal factors in assessing whether or not the supporting facts have become stale are the age of those facts and the nature of the conduct alleged to have violated the law." *United States v. Diaz,* 176 F.3d 52, 109 (2d Cir.1999).

Though it is true that the warrant affidavit does not specifically state that the CI personally observed narcotics in Apartment 1, 3443 Mickle Avenue [5], Lucas's affidavit does detail information from the CI from just over one week before the warrant was executed revealing that the apartment is a location from which "Blood" and "Sharon" conduct narcotics business. Further, the CI participated in a series of recorded telephone conversations with "Blood" and "Sharon" in the three weeks before the warrant was obtained and executed during which those individuals indicated that they were in possession of narcotics at various points during that brief interval. In sum, the information supplied in support of this warrant was obtained only a short time before the warrant application and execution; accordingly, this Court cannot find that the information that supplied the basis for the Lucas affidavit was stale.

### D. Rule 41(e)(2)(a)

 Defendants argue that the warrant violated the requirements of Federal Rule of Criminal Procedure 41(e)(2)(A), which mandates that the warrant specifi-

---

5. As noted above, this fact alone, when taken as part of the totality of the circumstances presented here, is not sufficient to vitiate Judge Edwards's probable cause determination.

cally "command the officer to execute the warrant within a specified time no longer than 10 days." While the warrant signed by Judge Edwards includes the date on which he signed the warrant and allows law enforcement officers to make an immediate search of Apartment 1 at 3443 Mickle Avenue "at any time of the day or night, without first announcing [their] presence," it does not specify that the warrant must be executed within a 10–day window.

Though Defendants correctly point out this technical deficiency in he warrant, suppression of evidence is not an appropriate remedy unless "(1) there was prejudice in the sense that the search might not have occurred or would not have been abrasive if the Rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule." *United States v. Burke*, 517 F.2d 377, 387 (2d Cir.1975). Here, there is no indication that Judge Edwards would not have issued a warrant calling for execution in ten days, nor is there any suggestion that there was any intentional disregard of the rule. Further, it is worth noting that the warrant was in fact executed just one day after it was issued As Defendants suffered no prejudice from the technical violation of Rule 41, the fruits of the search cannot be suppressed on this basis.

In sum, for all the reasons described in this section, Defendants' motions to suppress evidence recovered from the search of Apartment 1 at 3443 Mickle Avenue are DENIED.

## IV. *Franks* hearing

 Defendants also request a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), to determine whether Sergeant Lucas's representations in his search warrant affidavit and to this Court were reliable and accurate. According to the Second Circuit, Defendants are entitled to a Franks hearing to examine the truthfulness of statements in a search warrant affidavit if they: "(1) make[ ] a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit; and (2) the allegedly false statement is necessary to the finding of probable cause." *United States v. Patterson*, 135 Fed.Appx. 469, 472 (2d Cir.2005) (internal quotations omitted); *see Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

Defendants fail to offer sufficient evidence to warrant a *Franks* hearing. In her motion papers, King makes vague and conclusory allegations on information and belief that Lucas relied on false statements by the CI when completing his affidavit for the search warrant because the CI "never acted with Ms. King in the sale of narcotics." King Motion at 4. King failed to provide any support for the charge that the CI provided false information—she certainly did not discuss the issue in her own affidavit, nor did she submit any other affidavits or witness statements to bolster her suspicions. Further, she has also neglected even to allege that Lucas made a false statement or acted with reckless disregard for the truth. Given that a *Franks* hearing would be designed to examine the representations made by the warrant affiant, King's failure to allege any misstatement by the affiant himself makes it impossible to grant her request for a hearing.

Donahue Dewar offers nothing more than Elliott's four-paragraph declaration to substantiate his allegation that Lucas made knowing or reckless false statements in his affidavits. This declaration falls far short of the "substantial preliminary showing" necessary to entitle Defendants to a *Franks* hearing. Elliott's declaration sim-

ply states that she listed to "five files" and that she did not hear certain specific words while listening to those files. Elliott Decl. at ¶¶ 2–3. As a threshold matter, it is not clear to this Court from her declaration precisely which of the conversations referenced in Lucas's affidavits were in fact reviewed by Elliott; further, Elliott indicates that she only listened to the portions of the recordings that she deemed audible, without specifying what portion of the recordings she did not listen to, or whether or not another listener might have found them audible.

Moreover, Elliott's simple and conclusory statements alone provide far too little information. For example, the declaration is not accompanied by any sort of certified transcription of the recordings. A certified transcription would first permit this Court to understand which portions of the recordings were actually reviewed by Elliott and which portions she deemed inaudible; in addition, a transcript would allow this Court to examine the precise language used on the recordings, and better enable the Court to evaluate Lucas's representations about those conversations. At this point, there is no basis to conclude that Elliott's declaration is even inconsistent with Lucas's original search warrant affidavit and the declaration he submitted to this Court—it is certainly possible that even if the handful of words described by Elliott were not used in the recorded conversations, those conversations reasonably could be understood to mean exactly what Lucas represented that they meant. In sum, Defendants here have not made a sufficient preliminary showing that Lucas knowingly and intentionally, or with reckless disregard for the truth, included a false statement in his search warrant affidavit or his November 28, 2006 declaration. Defendants' request for a *Franks* hearing is therefore DENIED.

## V. Conclusion

For the reasons stated above:

1. Defendants' request for an order directing the Government to comply with its Rule 16 discovery obligations is DENIED. Defendants request for discovery under Rule 16 of any materials that are not specifically provided for under Rule 16 is also DENIED.

2. Defendants' motion for early disclosure of Rule 404(b) material is DENIED.

3. Defendants' motion for early disclosure of *Brady, Giglio*, and Jencks Act material is DENIED.

4. Defendants' request for early disclosure of the Government's witness list is DENIED.

5. Defendants' motion for disclosure of information regarding any confidential informants is DENIED.

6. Government's request for an order directing the Defend ants to comply with their Rule 16 discovery obligations is DENIED. Government's request for an order directing the Defendants to provide the notices mandated by Rules 12.2 and 12.3 is DENIED. Government's motion for an order pursuant to Rule 26.2 is GRANTED.

7. Defendants' request for a hearing regarding the August 28, 2005 vehicle stop is DENIED.

8. Defendants' motion to suppress evidence collected as part of the search of the blue Lexus on August 28, 2005 is DENIED.

9. Defendants' motions to suppress evidence recovered from the search of 3443 Mickle Avenue are DENIED.

10. Defendants' request for a hearing pursuant to *Franks v. Delaware*,

438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667(1978), is DENIED.

*It is so ordered.*