**UNITED STATES of America, Appellee,**

v.

**Evelyn SOTO, Defendant-Appellant.**

**No. 1468, Docket 83–1099.**

United States Court of Appeals,
Second Circuit.

Argued July 12, 1983.

Decided Aug. 29, 1983.

Sylvia Peck, Legal Aid Society, Federal Defender Services Unit, New York City, for defendant-appellant.

James R. DeVita, Asst. U.S. Atty., New York City (Rudolph W. Giuliani, U.S. Atty., and Roanne L. Mann, Asst. U.S. Atty., New York City, on brief), for appellee.

Before NEWMAN and WINTER, Circuit Judges, and MALETZ, Senior Judge.[*]

MALETZ, Senior Judge:

Defendant-appellant Evelyn Soto appeals from her conviction on two counts of conspiracy. The first count charged Soto with conspiracy to distribute narcotics in violation of 21 U.S.C. § 846; the second with conspiracy to use a firearm to commit a felony, a violation of 18 U.S.C. § 371.

Soto advances three arguments on this appeal. The first relates to an allegedly erroneous evidentiary ruling regarding co-conspirator hearsay statements, see *United States v. Geaney,* 417 F.2d 1116 (2d Cir. 1969). Another goes to a purported failure to correctly charge the jury on the elements of a conspiracy. Soto's primary claim, however, is that the evidence was insufficient as a matter of law to convict her of conspiracy. On this score, we agree and reverse the judgment of the district court.

## I

The basic facts are not in dispute. At the trial the government presented the testimony of four Drug Enforcement Administration (DEA) special agents. In essence their testimony established that Soto resided in a Bronx apartment located at 2526 Bronx Park East, 5–B, which was used, in part, as a narcotics "cutting mill." [1]

The government's chief witness was DEA Agent Fred Marrero. Agent Marrero testified that in his role as an undercover agent he met the person in charge of the cutting mill—a man known as "Cheo"—on June 29,

1982. Marrero was invited up to the Bronx apartment by Cheo where a group of six persons, including Soto, gathered in the bedroom. During Marrero's half-hour visit Soto remained in the bedroom for approximately ten to fifteen minutes. The meeting was interrupted at one point by the building superintendent who came to the apartment to speak to Cheo. As Cheo got up to leave, he commented that he (Cheo) did not allow anyone into the bedroom. At the time several handguns and drug paraphernalia were in plain view. There was no discussion or mention of either narcotics or weapons by anyone during Marrero's visit.

Following a tip from a confidential informant, DEA Agents Thomas Ward and Marrero made several arrests and seized a cache of guns and drugs at the apartment in the early morning hours of July 2, 1982. At the time of the agents' entry into the apartment, Agent Ward found Soto and her young child asleep in the bedroom. A search of that room uncovered drugs, drug paraphernalia and a weapon. A search of the rest of the apartment reaped a large quantity of drugs, drug paraphernalia, cash and more weapons. Although the apartment contained a substantial amount of contraband, it is equally clear that apartment 5–B was more than just a cutting mill—it was also a domicile for several individuals, including Soto,[2] being furnished with couches, sleeping cots and a television set.

Two stipulations were also made part of the record. The first provided that Soto arrived in New York from Puerto Rico on or about June 8, 1982; that she resided at 2526 Bronx Park East, apartment 5–B, from June 8, through July 2; and that apartment 5–B was leased in the name of Pablo Rodriguez but, in reality, was paid for and controlled by Cheo and his wife,

---

[*] Of the United States Court of International Trade, sitting by designation.

1. A "cutting mill" is a place where relatively pure drugs—usually heroin or cocaine—are diluted before being sold on the street.

2. At the time of her arrest Soto gave the arresting agent the 2526 Bronx Park East address as the place where she lived.

Nancy Medina. The second stipulation specified that ledger books found during the search of the apartment were examined by government experts for fingerprints and handwriting; that Soto's fingerprints were not identified, but those of Cheo and his wife were; and that Soto's handwriting was not identified as appearing anywhere on the ledger sheets. In this connection, Marrero testified that the ledger books contained a list of Cheo's employees and their salaries, but did not contain Soto's name.

Against this background, we address Soto's principal contention that the evidence was insufficient as a matter of law to convict her beyond a reasonable doubt.

## II

It is established that a defendant advancing a claim based on insufficiency of the evidence bears a very heavy burden. *See, e.g., United States v. Carson,* 702 F.2d 351, 361 (2d Cir.1983); *United States v. Losada,* 674 F.2d 167, 173 (2d Cir.), *cert. denied,* 457 U.S. 1125, 102 S.Ct. 2945, 73 L.Ed.2d 1341 (1982). As this court stated in *Carson:*

> Our inquiry is whether the jury, drawing reasonable inferences from the evidence, may fairly and logically have concluded that the defendant was guilty beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 317, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560, 572 (1979); *United States v. Barnes,* 604 F.2d 121, 157 (2d Cir.1979), *cert. denied,* 446 U.S. 907, 100 S.Ct. 1833, 64 L.Ed.2d 260 (1980). In making this determination, we must view the evidence in the light most favorable to the government, *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680, 704 (1942), and construe all permissible inferences in its favor, *United States v. Dazzo,* 672 F.2d 284, 288 (2d Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 81, 74 L.Ed.2d 77 (1982).

*Id.* at 361. Given that "[a] conspiracy by its very nature is a secretive operation," *United States v. Provenzano,* 615 F.2d 37, 45 (2d Cir.), *cert. denied,* 446 U.S. 953, 100 S.Ct. 2921, 64 L.Ed.2d 810 (1980), the "[e]xistence of and participation in a conspiracy ... may be established ... through circumstantial evidence." *United States v. Sanzo,* 673 F.2d 64, 69 (2d Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 128, 74 L.Ed.2d 111 (1982).

■ The most significant circumstance relied on by the government in support of the jury's finding of guilt is the fact that Soto lived in apartment 5–B for three weeks prior to her arrest. Her sustained and regular presence in that apartment, the government contends, is circumstantial evidence from which the jury could infer defendant's membership in the narcotics and firearms conspiracies.

We are constrained to disagree. While it would not be accurate to characterize Soto's presence at the apartment as merely transitory, we nevertheless consider the total circumstances of how Soto came to reside there to be highly significant. For here we have an individual newly arrived from Puerto Rico, accompanied by a child of tender years, clearly in need of shelter. To this end, as soon as she arrived in New York defendant took up residence at the 2526 Bronx Park East apartment. Although the living arrangements there may not have been ideal, there is no indication that defendant had any other alternative.

■ As defendant correctly observes, and as the government necessarily concedes, Soto's mere presence at the apartment, even coupled with the knowledge that a crime was being committed there, is not sufficient to establish her guilt. *See, e.g., United States v. Johnson,* 513 F.2d 819 (2d Cir.1975). Evidence tending to show knowing participation in the conspiracy is also needed. *See, e.g., United States v. Bulman,* 667 F.2d 1374, 1377–78 (11th Cir.), *cert. denied sub nom. Howard v. United States,* 456 U.S. 1010, 102 S.Ct. 2305, 73 L.Ed.2d 1307 (1982); *United States v. Reyes,* 595 F.2d 275, 280 (5th Cir.1979). Absent some

showing of purposeful behavior tending to connect defendant with the acquisition, concealment, importation, use or sale of drugs or firearms, participation in the conspiracies cannot be proven by presence alone. *Johnson,* 513 F.2d at 823–24. *See also United States v. Cirillo,* 499 F.2d 872, 883 (2d Cir.) (presence itself will support a conspiracy conviction only if that presence is a functional part of the conspiracy), *cert. denied,* 419 U.S. 1056, 95 S.Ct. 638, 42 L.Ed.2d 653 (1974). *Compare United States v. Perez,* 491 F.2d 167, 171 (9th Cir.), *cert. denied sub nom. Lombera v. United States,* 419 U.S. 858, 95 S.Ct. 106, 42 L.Ed.2d 92 (1974) (defendants served as lookouts).

The government stresses that on the morning of the July 2 arrests Soto was found sleeping in the room where the drugs were cut. But this fact demonstrates nothing more than that defendant, as a mere guest or invitee, did not enjoy exclusive dominion or control over the bedroom or, for that matter, over the apartment in general. *Cf. United States v. Vilhotti,* 452 F.2d 1186 (2d Cir.1971), *cert. denied,* 406 U.S. 947, 92 S.Ct. 2051, 32 L.Ed.2d 335 (1972). The government further submits that based on the statement by Cheo to Marrero to the effect that Cheo did not want the building superintendent in the bedroom, the inference can be drawn that Cheo trusted Soto and that, therefore, Soto must have joined the conspiracy. In our view, however, even conceding the reasonableness of such an inference, Cheo's statement at most shows that he trusted Soto, a feeling any person would quite naturally have before inviting another to share living quarters. To conclude from this that Soto had joined the conspiracy would require an inference no jury could reasonably make. The fact that Soto was considered trustworthy, given the circumstances here, is a far cry from her participation in the conspiracies. *See United States v. Valenzuela,* 596 F.2d 824, 831 (9th Cir.) (proof insufficient of wife's participation in conspiracy with husband to distribute narcotics, since "mere joint occupancy is at best equivocal"), *cert. denied,* 441 U.S. 965, 99 S.Ct. 2415, 60 L.Ed.2d 1071 (1979).

Finally, we find misplaced the government's reliance on those cases where members of a vessel's crew were held to be participants in a drug conspiracy. *See, e.g., United States v. Freeman,* 660 F.2d 1030 (5th Cir.1981), *cert. denied,* —— U.S. ——, 103 S.Ct. 54, 74 L.Ed.2d 59 (1982); *United States v. DeWeese,* 632 F.2d 1267 (5th Cir. 1980), *cert. denied,* 454 U.S. 878, 102 S.Ct. 358, 70 L.Ed.2d 188 (1981); *United States v. Alfrey,* 620 F.2d 551 (5th Cir.), *cert. denied,* 449 U.S. 938, 101 S.Ct. 337, 66 L.Ed.2d 160 (1980). A distinguishing factor in those cases is the joint enterprise element between captain and crew. *See, e.g., United States v. Bent,* 702 F.2d 210 (11th Cir.1983); *United States v. Martinez,* 700 F.2d 1358, 1366 (11th Cir.1983). There, the existence of a joint enterprise is inferable in view of the close relationship among those on board, coupled with the foreknowledge of the vessel's illicit mission given the large quantities of contraband frequently involved. *See, e.g., United States v. Quejada-Zurique,* 708 F.2d 857 (1st Cir.1983); *United States v. Munoz,* 692 F.2d 116 (11th Cir.), *modifying* 681 F.2d 1372 (1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1229, 75 L.Ed.2d 463 (1983).

Here, by contrast, there is no comparable showing or even the slightest suggestion that Soto had knowledge of the ongoing drug mill activities before moving into the Bronx apartment. Moreover, considering the absence of her name from the list maintained by Cheo of persons he employed in the furtherance of the drug operation, the inescapable inference to be drawn from the evidence is that she never joined the conspiracy. *See United States v. Mehtala,* 578 F.2d 6, 10 (1st Cir.1978) ("Government's entire proof [which] consisted of Mehtala's presence on the ship . . . and inferences of a close relationship with the . . . captain" insufficient); *United States v. Francomano,* 554 F.2d 483 (1st Cir.1977) (presence at the scene and close association with a smuggler insufficient proof).

In sum, while the evidence need not have excluded every possible hypothesis of innocence, nevertheless, "[w]here the crime charged is conspiracy, a conviction cannot be sustained unless the Government establishes beyond a reasonable doubt that the defendant had the specific intent to violate the substantive statute[s]." *United States v. Cangiano,* 491 F.2d 906, 909 (2d Cir.), *cert. denied,* 419 U.S. 904, 933, 95 S.Ct. 188, 205, 42 L.Ed.2d 149 (1974). The government here produced no evidence whatever linking defendant to the conspiracies. Instead, we believe that on the basis of association alone, the jurors "let their imaginations run rampant." *United States v. Mora,* 598 F.2d 682, 684 (1st Cir.1979).

Because we decide that there was insufficient evidence to support a conviction, we need not address the other issues raised on appeal.

### III

For the foregoing reasons, the judgment of the district court is reversed and remanded with direction to enter a judgment of acquittal.