**UNITED STATES of America,**
**Appellee,**

v.

**James JONES, Jr., also known as James Lee Jones, Joseph E. Williams, Defendants–Appellants,**

**Docket Nos. 03–1548L, 03–1566(CON).**

United States Court of Appeals, Second Circuit.

Argued: Aug. 9, 2004.

Decided: Dec. 15, 2004.

Michael J. Tallon, Barrett Greisberger Dollinger Fletcher Peartree & Tallon, LLP, Pittsford, New York for Appellant James Jones, Jr.

Scott M. Green, Rochester, New York for Appellant Joseph E. Williams.

Stephan J. Baczynski, Assistant United States Attorney for the Western District of New York (Michael A. Battle, United States Attorney; Bret Puschek, Assistant United States Attorney, on the brief) for Appellee.

Before: JACOBS, B.D. PARKER and HALL, Circuit Judges.

JACOBS, Circuit Judge.

James Jones, Jr. and Joseph Williams were convicted on drug and firearm offenses following a jury trial in the Western District of New York (Larimer, *J.*), based chiefly on evidence that they were two of the three persons in an apartment that was being used to deal drugs and in which firearms and a drug cache were located.

Defendants challenge their convictions on the grounds that the government relied upon testimonial hearsay barred by the Supreme Court's recent decision in *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), and that in any event the evidence is insufficient to support conviction beyond a reasonable doubt. The government concedes the *Crawford* violation, but argues harmless error in view of the surfeit of other evidence. We hold that the evidence properly admitted is insufficient; it is doubtful that the evidence barred by *Crawford* would have made a difference, but if so, the *Crawford* error could not be harmless. We reverse and remand for entry of a judgment of acquittal on all counts.

## I

The eye-witness testimony established that in November 2000, Officer Anthony Mazurkiewicz of the Rochester Police Department ("RPD") observed unusual traffic in an alleyway abutting the rear of a four-family house on Ontario Street, and suspected that the traffic pattern was consistent with drug-dealing activity in the building. Among other phenomena, Mazurkiewicz observed a well-worn path in the snow leading to a window at the rear of a first floor apartment, and persons loitering at the location who would flee when they noticed him.

At approximately 8:30 p.m. on November 23, Mazurkiewicz and his partner, Donald McKeeby, saw a loiterer in the alleyway. Mazurkiewicz accosted the loiterer—who identified himself as Ronnie Witcher. During a consensual pat-down, a disembodied voice was heard to ask, "Yo, are you alright out there?" Witcher produced a walkie-talkie, disclaimed ownership of it, said he was a homeless drug addict, and admitted that he was acting as a lookout for drug-dealing in progress at the ground-floor apartment. Witcher was taken to a nearby homeless shelter.

At about 10 p.m., Mazurkiewicz and McKeeby returned to the house on Ontario Street with fellow Officers David Anne, Nicholas Mazzola, and Paul Romano. Pursuant to plan, McKeeby, Anne, Mazzola, and Romano established a perimeter, and Mazurkiewicz, muffling his voice, announced through the walkie-talkie (taken from Witcher), "Hello ... jump out is rolling up," *i.e.,* the police are coming. Within seconds, Anne and Romano saw something drop into the snow beneath a window. At the drop-spot, Officer Anne found a 9–millimeter handgun and a large plastic baseball holding 44 fingernail-sized bags, each of which contained a white substance later identified as crack cocaine. Anne reported his discovery to the other officers via walkie-talkie.

The gun and drugs had been ejected from a first-floor apartment leased and occupied by one Laura Brown. McKeeby knocked on a side door of the building, which opened to reveal Jones and Williams in a common hallway with a leashed pit-bull, which they said they were taking for a walk. Jones and Williams went outside with officers Mazzola and McKeeby, and Brown took the dog into her apartment off the common hallway.

With Brown's consent, Mazurkiewicz and other officers searched the apartment, recovered a second walkie-talkie and a police scanner, and ascertained that the gun and drugs had been discarded through a bathroom window. At the police station, Jones and Williams denied knowledge of the drugs, but each conceded in writing that he had handled a gun on a prior visit to Brown's apartment. Both men said they were unemployed, and Williams said that he paid Brown $30 a week to "chill" at her place. A search revealed that Williams was carrying $390.

Jones and Williams were indicted on October 25, 2001 for conspiracy to possess and distribute, and possession with intent to distribute cocaine base, and for possession of a firearm in furtherance of those drug-trafficking offenses. In October 2001, Brown pleaded guilty to making her apartment available to defendants for their drug dealing. She testified to the grand jury that Witcher paid her $25 per week to stay at her apartment with his girlfriend. Sometime after, Brown disappeared.

Judge Larimer presided over the joint trial of Jones and Williams in the Western District of New York from May 8 through May 12, 2003. The government's proof consisted of live testimony from five police officers, as summarized above; forensic expert testimony on fingerprints and firearms (which added little); and stipulated hearsay testimony from Brown and Witcher. Witcher was in police custody at the time of trial, but was ruled unavailable when he indicated his intention to invoke the privilege against self-incrimination. Jones and Williams offered no proof.

Prior to closing arguments, counsel for the defendants moved pursuant to Federal Rule of Criminal Procedure 29 to dismiss the indictments on the ground that the evidence was insufficient. The district court acknowledged problems with the government's proof, but reserved judgment. The jury convicted the defendants on all counts. Defendants' Rule 29 motions were renewed at sentencing. The district court denied the motions on the grounds that, viewing the evidence in a "light most favorable to the Government,"

> there [was] sufficient evidence for a jury to find—not that they had to, but that they could find beyond a reasonable doubt that there was a conspiracy to distribute drugs involving the defendants and perhaps others; that there was sufficient evidence for the jury to

find that the men possessed the drugs in question with intent to distribute them; and that the weapon found was used . . . in furtherance of the drug trafficking crime.

Jones is serving a principal sentence of 117 months incarceration; Williams is serving a principal sentence of 123 months due to his additional conviction on a felon-in-possession of a firearm charge.

## II

In a break from precedent, the Supreme Court recently held that "[t]estimonial statements of witnesses absent from trial . . . [are admissible] only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Crawford*, 124 S.Ct. at 1369, *abrogating Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). Though the Court declined to provide categorical guidance, "interrogations by law enforcement officers," *Crawford*, 124 S.Ct. at 1365, and plea allocutions, *United States v. McClain*, 377 F.3d 219, 220 (2d Cir. 2004), "fall squarely within" the testimonial class, *Crawford*, 124 S.Ct. at 1365.

Two key witnesses—Brown and Witcher—were unavailable to testify at trial. The government sought to admit out-of-court statements from both witnesses under Federal Rule of Evidence ("F.R.E.") 804(b)(3), the hearsay exception for statements against interest made by a declarant deemed "unavailable" as defined in F.R.E. 804(a). Defense counsel objected, and the district court postponed a ruling until the close of the government's case, with the hope that one or both witnesses might become available. At that point, Judge Larimer read to the jury stipulated hearsay testimony: as to Brown, that she pled guilty to making her apartment available for storing or distributing drugs on or about November 23, 2000; and as to

Witcher that, if Officer Mazurkiewicz were to return to the stand, he would testify that Witcher admitted using the two-way radio found on him to assist drug sales from the rear apartment on Ontario Street. The jury was instructed that the statements of Brown and Witcher could be considered only to determine whether someone was selling drugs from the apartment, but not to support a finding that Jones or Williams did so or conspired to do so. These limiting instructions notwithstanding, the government concedes that the statements by Brown and Witcher are testimonial hearsay inadmissible under *Crawford*, and therefore cannot be weighed in determining the sufficiency of the government's case.

■■■ A criminal defendant who challenges the sufficiency of evidence shoulders a heavy burden, but not an impossible one. *See, e.g., United States v. Samaria,* 239 F.3d 228, 233 (2d Cir.2001); *United States v. Nusraty,* 867 F.2d 759, 765–67 (2d Cir.1989). We review such challenges *de novo, United States v. Naiman,* 211 F.3d 40, 46 (2d Cir.2000), and will affirm if, "viewing all the evidence in the light most favorable to the prosecution, 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,'" *Samaria,* 239 F.3d at 233 (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). While we defer to a jury's assessments with respect to credibility, conflicting testimony, and "'the jury's choice of the competing inferences that can be drawn from the evidence,'" *Samaria,* 239 F.3d at 233 (quoting *United States v. Morrison,* 153 F.3d 34, 49 (2d. Cir.1998)), specious inferences are not indulged. "These principles apply whether the evidence being reviewed is direct or circumstantial." *United States v. Gore,* 154 F.3d 34, 40 (2d Cir.1998).

■■■ The government charged that Williams and Jones conspired to possess and distribute crack cocaine, did in fact possess it with intent to distribute, and possessed as well a handgun (found in Brown's apartment) in furtherance of those crimes. To prove conspiracy, "the government must present some evidence from which it can reasonably be inferred that the person charged with conspiracy knew of the existence of the scheme alleged in the indictment and knowingly joined and participated in it." *Gore,* 154 F.3d at 40 (internal quotation marks omitted). "The agreement between the party charged and his co-conspirators is the gist of the crime of conspiracy,"; and though agreement may be inferred from entirely circumstantial evidence, "[s]uspicious circumstances . . . are not enough to sustain a conviction." *Nusraty,* 867 F.2d at 763.

■■■ "[M]ere presence at the scene of a criminal act or association with conspirators does not constitute intentional participation in [a] conspiracy, even if the defendant has knowledge of the conspiracy." *Samaria,* 239 F.3d at 235. "Evidence tending to show knowing participation in the conspiracy is also needed," *United States v. Soto,* 716 F.2d 989, 991 (2d Cir. 1983), *i.e.,* facts sufficient to draw a "logical and convincing connection" between circumstantial evidence of an agreement, and the inference that an agreement was in fact made. *See, e.g., Gore,* 154 F.3d at 41.

■■■ Netting out the testimonial hearsay barred by *Crawford,* the government's case consisted of eye-witness testimony (summarized above) from the five Rochester police officers who participated in the raid on Brown's apartment, and forensic-expert testimony on fingerprints and firearms—which established no connection between the defendants and any evidence collected on November 23, 2000.

Taken together, this evidence supports certain inferences: that drugs were being dealt out of Brown's apartment by one or more persons, that the gun and drugs found in the alley on November 23 were ejected from Brown's apartment on that date (in response to a warning that the police were on their way), that the drugs were inventory and that the gun was used in aid of the business, and that Jones, Williams and Brown were in the apartment when the contraband was discarded, and would have known that illegal drug activity was being conducted by one or more of Jones, Williams and Brown. But the evidence is insufficient to demonstrate, beyond a reasonable doubt, that either *Jones* or *Williams,* individually, engaged in "purposeful behavior tending to connect" either of them to "the acquisition, concealment, ... use or sale of" crack cocaine. *Soto,* 716 F.2d at 992.

With the witnesses Brown and Witcher unavailable to testify at trial, the government's case was thin and lacked substantial indicia of the specific elements of the underlying crime. There was no evidence that either defendant "participated in conversations directly related" to dealing crack cocaine, or that either defendant "exercised authority" within the alleged conspiracy itself; or that either defendant "explicitly confirm[ed] the nature of the activity in which the co-conspirators were engaged." *Samaria,* 239 F.3d at 235–36. Apart from the presence of each defendant in Brown's apartment at the time of the raid, and the probability that each was aware that contraband was being dropped from the bathroom window, there was no "pattern of acts or incriminating physical evidence reflecting [either] defendant's participation" in a drug dealing scheme; nor was it established that each or either defendant had actual or constructive possession of the drugs found at the scene.

*See Nusraty,* 867 F.2d at 764; *see also Soto,* 716 F.2d at 991–93.

Nor can a "logical and convincing" inference of agreement be drawn from the weak circumstantial evidence in the record. *Gore,* 154 F.3d at 41. Neither defendant was shown to be on the premises at the time Mazurkiewicz discovered Witcher (and his walkie-talkie), because no one witnessed comings and goings on Ontario Street between Mazurkiewicz's decision to leave the scene (at 8:50 p.m.) and his return in force seventy minutes later. The forensic evidence failed to link either defendant to anything inside the apartment or thrown out of it on November 23, 2000. The circumstances are surely suspicious, including (as the government notes) the defendants' attempt to walk the dog just as the police were closing in; but the mere presence of Williams and Jones in Brown's apartment at the time of the raid (and their pretextual reason for leaving) cannot support the inference that one or both of them participated in a scheme to deal drugs on November 23, 2000. *See, e.g., Samaria,* 239 F.3d at 235–36; *Nusraty,* 867 F.2d at 763–65; *Soto,* 716 F.2d at 991–93. Brown may have been the dealer; she may or may not have been in a conspiracy; and if she was, she may have conspired with Williams or Jones, or both, or someone else altogether. Even a person merely present would not necessarily want to be there while the police sorted things out. The government failed to establish beyond a reasonable doubt that there was a conspiracy that included Williams and Jones, rather than (say) Williams, *or* Jones, or Witcher, or Brown, or *anyone else.* Any of these combinations is plausible, but on this record, none is established beyond a reasonable doubt.

For similar reasons, we reverse defendants' convictions for the substantive offenses of possession with intent to distrib-

ute crack cocaine, and possession of a firearm in furtherance of that crime. Williams' felon-in-possession conviction is likewise reversed.*

For the foregoing reasons, defendants' convictions are hereby reversed and the case is remanded to the district court with instructions to enter a judgment of acquittal on all counts.

The mandate shall issue forthwith.

---

* The indictment charged Williams (a convicted felon) with possession of a firearm on November 23, 2000. The insufficiencies described above apply with equal force to Williams' felon-in-possession conviction.