**UNITED STATES of America,**
**Appellee,**

v.

**James GILLEY, Defendant–Appellant.**

**No. 06–1496–cr.**

United States Court of Appeals,
Second Circuit.

May 6, 2008.

Stephan J. Baczynski, Assistant United States Attorney (Terrance P. Flynn, United States Attorney for the Western District of New York, on the brief), Buffalo, New York, for Appellee.

Gary Muldoon, Muldoon & Getz, Rochester, New York, for Defendant–Appellant.

PRESENT: Hon. CHESTER J. STRAUB, Hon. REENA RAGGI, Circuit Judges, Hon. SIDNEY H. STEIN, District Judge.*

## SUMMARY ORDER

Defendant–Appellant James Gilley appeals from a judgment of conviction and sentence of the United States District Court for the Western District of New York (Charles J. Siragusa, *Judge*), entered on March 30, 2006, the defendant

---

* The Honorable Sidney H. Stein, United States District Judge for the Southern District of New York, sitting by designation.

having been convicted of the following: (1) conspiring to distribute and to possess with intent to distribute cocaine base and marijuana in violation of 21 U.S.C. § 846; (2) possessing with intent to distribute a substance containing cocaine base in violation of 21 U.S.C. § 841(a)(1); (3) possessing with intent to distribute a substance containing marijuana in violation of 21 U.S.C. § 841(a)(1); and (4) possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1). The defendant was principally sentenced to 420 months' imprisonment. On appeal, Gilley argues that there was insufficient evidence before the jury to convict him of committing any of the above crimes, that alleged prosecutorial misconduct deprived him of due process, and that his sentence was both procedurally and substantively unreasonable. We assume the parties' familiarity with the factual background, procedural history, and issues on appeal.

*A. Sufficiency Challenge*

■ Gilley first argues that the District Court erred in denying his motion for an acquittal as to all of the counts charged against him. Specifically, Gilley contends—as he did before the District Court—that no reasonable jury could have found, beyond a reasonable doubt and based upon the evidence of the record, that he was guilty of conspiracy to distribute and to possess with intent to distribute cocaine base and marijuana, possession with intent to distribute either marijuana or cocaine base, or possession of a weapon in furtherance of a drug trafficking crime.

■ A defendant challenging the sufficiency of the evidence that was the basis of his conviction at trial "bears a heavy burden." *United States v. Parkes*, 497 F.3d 220, 225 (2d Cir.2007), *cert. denied,* ―― U.S. ――, 128 S.Ct. 1320, 170 L.Ed.2d 133

(2008). In *Parkes,* we explained the applicable standard of review for such a challenge:

"[W]e view the evidence in the light most favorable to the government, drawing all inferences in the government's favor and deferring to the jury's assessments of the witnesses' credibility. We will sustain the jury's verdict so long as *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

*Id.* (internal citations and quotation marks omitted; emphasis in original). As Gilley testified in his own defense at trial, the jury here is entitled to disbelieve his testimony and to use its disbelief to supplement other evidence against him. *See United States v. Stanley*, 928 F.2d 575, 577 (2d Cir.1991), *cert. denied,* 502 U.S. 845, 112 S.Ct. 141, 116 L.Ed.2d 108 (1991); *see also United States v. Rahman*, 189 F.3d 88, 128 (2d Cir.1999) (stating that the jury could have concluded that the defendant gave "sometimes false and often strained testimony" at trial because he was conscious of his own guilt), *cert. denied,* 528 U.S. 1094, 120 S.Ct. 830, 145 L.Ed.2d 698 (2000).

"To prove conspiracy, the government must present some evidence from which it can reasonably be inferred that the person charged with conspiracy knew of the existence of the scheme alleged in the indictment and knowingly joined and participated in it." *United States v. Jones*, 393 F.3d 107, 111 (2d Cir.2004) (internal quotation marks omitted). "[T]hough agreement may be inferred from entirely circumstantial evidence, suspicious circumstances are not enough to sustain a conviction. Mere presence at the scene of a criminal act or association with conspirators does not constitute intentional participation in a conspiracy, even if the defendant has knowledge of the conspira-

cy." *Id.* (internal quotation marks and alterations omitted). "However, where the government presents evidence tending to show that the defendant was present at a crime scene under circumstances that logically support an inference of association with the criminal venture, a reasonable juror could conclude the defendant was a knowing and intentional criminal conspirator." *United States v. Snow,* 462 F.3d 55, 68 (2d Cir.2006) (internal quotation marks omitted), *cert. denied,* —— U.S. ——, 127 S.Ct. 1022, 166 L.Ed.2d 770 (2007).

■ In arguing that there was insufficient evidence to convict him on the conspiracy counts, Gilley relies almost exclusively on our decision in *Jones,* 393 F.3d at 107. In *Jones,* we held that the evidence produced at trial was insufficient to prove that the defendants conspired to possess and distribute crack cocaine, possessed it with intent to distribute or possessed a handgun in furtherance of those crimes. *Id.* at 111–13. The sum of the admissible evidence produced against the defendants consisted of eye-witness testimony from an arresting police officer that he found both defendants in a common hallway of a four-family house and exiting an apartment, (from the window of which drugs had recently been discarded), written admissions that they had each handled a gun on a prior visit to the apartment in question, an admission from one defendant that he paid the apartment tenant $30 per week to "chill" at her place, and the fact that one defendant was found carrying $390.[1] *Id.*

at 109, 111. While we acknowledged that a reasonable jury could draw certain factual inferences from this evidence, we held that it was "insufficient to demonstrate, beyond a reasonable doubt, that either Jones or Williams, individually, engaged in purposeful behavior tending to connect either of them to the acquisition, concealment use or sale of crack cocaine." *Id.* at 112 (alterations and internal quotation marks omitted).

In contrast to *Jones,* the government here presented significantly more evidence to the jury to support the inference that a conspiracy existed between Gilley and at least one other individual to distribute and to possess with intent to distribute cocaine base and marijuana. For example, Gilley admitted at trial that the duffel bag found inside the downstairs apartment and containing his personal effects belonged to him. In addition, witness Kathleen Trombley testified about a statement by Gilley to Brian Johnson, his alleged co-conspirator, after the police detained them inside the downstairs apartment that "we shouldn't have brought it in the house," but that she did not know to what "it" referred. Although Gilley himself testified about how he arrived at 85 Thomas Street and why his duffel bag was found near the bathroom in the downstairs apartment, key portions of these explanations were contradicted by both Trombley and Frankie Belford, Gilley's own witness. Finally, police officers discovered a loaded semiautomatic pistol and 22 bags of crack cocaine inside the downstairs apartment. A rea-

---

1. At trial, the district court also admitted hearsay testimony from two unavailable witnesses, both of whom were alleged to be co-conspirators with the defendants. *See Jones,* 393 F.3d at 110–11. However, the admission of such evidence violated the Confrontation Clause under the subsequent Supreme Court decision of *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

As a result, we did not consider this evidence in addressing the defendants' sufficiency challenges. *Id.* at 111. In addition, the government produced forensic expert testimony on fingerprints and firearms, which established no connection between the defendants and any evidence collected on the night of their arrest. *Id.*

sonable jury could infer that Gilley gave a false account of the events of June 4, 2004, and did so because he was conscious of his own guilt. *See Stanley,* 928 F.2d at 577; *Rahman,* 189 F.3d at 128.

■ As to the drug possession counts, Gilley testified that the drugs found on his person were only for his personal use, not for distribution to others. However, a reasonable jury was entitled to disbelieve this assertion, given the means in which Gilley stored crack on his person, the fact that 22 bags of crack cocaine were found inside the downstairs apartment, and the fact that additional drugs were found near where Gilley had been detained and where a police officer observed Gilley throwing something away. Moreover, as Gilley put his own intent in issue, the government was allowed to introduce evidence that Gilley had previously been convicted of a drug conspiracy for the purpose of proving that Gilley intentionally agreed to the alleged conspiracy here.[2]

■ Finally, Gilley contends that the government produced no evidence connecting him to the weapon found inside the downstairs apartment. We have held that a defendant may constructively possess contraband where the defendant "knowingly had the power and the intention at a given time to exercise dominion and control over" the firearm. *United States v. Finley,* 245 F.3d 199, 203 (2d Cir.2001),

*cert. denied,* 534 U.S. 1144, 122 S.Ct. 1101, 151 L.Ed.2d 997 (2002). In addition, the defendant's dominion and control over the contraband need not be exclusive. *See United States v. Morgan,* 385 F.3d 196, 207 (2d Cir.2004); *see also United States v. Eltayib,* 88 F.3d 157, 172 (2d Cir.1996) ("Dominion and control of contraband, either exclusively or in association with others, are sufficient to prove possession."), *cert. denied,* 519 U.S. 1045, 117 S.Ct. 619, 136 L.Ed.2d 543 (1996). Although a defendant's "mere presence at the location of contraband does not establish possession," *United States v. Rodriguez,* 392 F.3d 539, 548 (2d Cir.2004) (alterations omitted), we have held that "presence under a particular set of circumstances" from which a reasonable jury could conclude that the defendant constructively possessed contraband located there would support a conviction. *United States v. Soto,* 959 F.2d 1181, 1185 (2d Cir.1992) (rejecting insufficiency claim where defendant argued that he was a "mere purchaser" despite the fact that he was present at apartment containing three separate crack packaging stations and with no money on his person).

Here, the evidence discussed above sufficiently demonstrates for a reasonable jury that Gilley was involved in a drug conspiracy and that the weapon found in the apartment was used in furtherance of that conspiracy. The gun was found near

---

**2.** In arguing that the government had failed to meet its burden of proof regarding the third count—possession with intent to distribute a substance containing marijuana—Gilley relies on the fact that no marijuana was found inside the apartment or on Johnson's person. However, a reasonable jury need not have found this fact persuasive because an officer testified that he observed Johnson throwing something into a neighboring lot, and, upon later inspection, officers found sufficient marijuana in the lot that was packaged in material consistent with the packaging materials found inside the apartment. Gilley also ar-

gues that the jury erred in crediting the police officer's testimony that he found Johnson inside the apartment because the Investigative Action Report of that officer was not produced at trial and because Trombley testified that she observed Johnson urinating outside 85 Thomas Street prior to the drug raid. Even assuming that such evidence conflicts with the officer's testimony, Gilley's argument amounts to no more than a challenge to the jury's acceptance of one version of facts over another—i.e., the jury's proper exercise of its fact-finding role.

the foot of the couch and close to drugs. As the jury found that Gilley was a part of the drug trafficking operation based in the downstairs apartment of the house at 85 Thomas Street, it was reasonable for them to believe that he had constructive possession of the firearm found therein.

In sum, there was sufficient evidence presented in the District Court to support a reasonable jury's verdict of guilty as to the drug conspiracy, drug possession and firearm possession counts.

### B. Alleged Prosecutorial Misconduct

■ On this issue, Gilley makes two related arguments. First, Gilley contends that the government intimidated a witness by bringing Roderick Pettaway—a witness subpoenaed by both the government and Gilley—to the Federal Building in order to question him because Pettaway then decided not to testify at trial. According to Gilley's counsel, an ATF agent threatened Pettaway by informing him that he could face substantial prison time if he chose to testify. Second, as this interview produced a report written by that agent memorializing the interview that Gilley's counsel considered favorable to his defense, Gilley argues that the "belated (and begrudging) disclosure of *Brady* and Jencks Act material" by the government was "clearly improper" because it was not provided early enough for defense counsel to incorporate such material as part of their trial strategy.

As to the first argument advanced by Gilley, we have held that the questions of whether substantial interference occurred with regard to a witness's "free and unhampered choice" to testify is a factual one that we review for clear error. *See United States v. Pinto,* 850 F.2d 927, 932 (2d Cir.1988). Regarding any alleged witness intimidation here, the government flatly represented to the District Court

that the ATF agent did not "make any veiled threats or any threats to Mr. Pett[a]way whatsoever." In addition, the District Court paraphrased, on the record, the contents of the ATF agent's report, specifically noting the fact that Pettaway had admitted a crime during the non-custodial interview that could subject him to prosecution. Based upon this information, the District Court concluded that the alleged statement by the ATF agent to Pettaway that he could face criminal charges was not, in itself, deserving of any remedy in the context of Gilley's efforts to have Pettaway testify in his defense. In doing so, the District Court observed that Pettaway's decision to invoke his Fifth Amendment rights was made upon the advice of counsel and was independent of any conversation Pettaway had with law enforcement. After reviewing the record of the District Court proceedings on this issue, we cannot conclude that the District Court's determination was clearly erroneous.

■ Gilley's second argument is that the District Court improperly addressed the government's failure to provide possibly exculpatory material to him in a timely fashion, despite its obligation to do so under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and the Jencks Act, 18 U.S.C. § 3500. "If the government has failed to disclose to the defendant evidence favorable to him, relief is warranted only if the evidence was 'material.'" *United States v. Avellino,* 136 F.3d 249, 256 (2d Cir.1998) (quoting *United States v. Bagley,* 473 U.S. 667, 678, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)). "[F]avorable evidence is material, and constitutional error results from its suppression by the government, if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."

*Kyles v. Whitley*, 514 U.S. 419, 433–34, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).

Here, the statement at issue was that Pettaway had observed Johnson outside the house urinating prior to the drug raid, but that it was also possible that Johnson went inside the house because Pettaway was not watching him the entire time. Neither before the District Court nor in his brief here does Gilley articulate his theory for how the Pettaway statement— as memorialized in a statement by law enforcement—exculpates him from the crimes with which he was charged. To the extent that Gilley argues that Pettaway would have testified to observing Johnson urinating outside the house prior to the drug raid, such testimony contributes nothing more than the Trombley testimony. Moreover, as discussed above, the government produced more than sufficient evidence that Gilley and Johnson were co-conspirators in trafficking drugs, including the following: the fact that Gilley's duffel bag was found inside the downstairs apartment, the statement from Gilley to Johnson as overheard by Trombley, Gilley's own testimony that was directly contradicted by other witnesses, the manner in which Gilley hid drugs on his person, and Gilley's prior convictions of drug conspiracy. In light of this evidence, the Pettaway statement does not appear to be of such significance that there is a reasonable probability of a different result for Gilley.

### C.  Unreasonable Sentence

■ Finally, Gilley argues that the District Court gave him a "harsh and excessive" sentence that was therefore unreasonable. *See United States v. Rattoballi*, 452 F.3d 127, 131 (2d Cir.2006). Specifically, Gilley compares his conviction after trial on four counts with the sentencing for Johnson, his co-defendant and co-conspirator, who pled guilty to one count. Gilley argues that the fact that he received 420 months' imprisonment while Johnson received only 5 years' probation is an "unwarranted sentencing disparit[y]" in violation of 18 U.S.C. § 3553(a)(6). Aside from the facts that the two individuals had different criminal histories and one pled guilty while the other went to trial, the District Court noted that the government offered Johnson a plea deal, in part, because of alleged violations of *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), a circumstance that was not present in Gilley's case. After explicitly considering Gilley's arguments to the contrary, the District Court properly found that there was no personal circumstance in Gilley's case that warranted its departing from the Career Offender provisions of the Sentencing Guidelines.

For the foregoing reasons, we **AFFIRM** the judgment of the District Court.