12-4988 (L)
*United States v. Annabi*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 25th day of March, two thousand fourteen.

PRESENT:

> JOSÉ A. CABRANES,
> SUSAN L. CARNEY,
> CHRISTOPHER F. DRONEY,
> > *Circuit Judges.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,

> *Appellee,*

-v.-

Nos. 12-4988 (Lead)
12-4990 (Con)

SANDY ANNABI and ZEHY JEREIS,

> *Defendants-Appellants.*\*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**FOR DEFENDANT SANDY ANNABI:**   EDWARD V. SAPONE, Edward V. Sapone, LLC, New York, NY.

**FOR DEFENDANT ZEHY JEREIS:**   PAULA SCHWARTZ FROME, Garden City, NY.

---

\* The Clerk of Court is directed to amend the official caption in this case to conform to the listing of the parties above.

1

**FOR APPELLEE:** PERRY A. CARBONE, Assistant United States Attorney (Preet Bharara, United States Attorney for the Southern District of New York, Jason P.W. Halperin, Justin S. Weddle, Assistant United States Attorneys, *on the brief*) New York, NY.

Appeal from the judgment of the United States District Court for the Southern District of New York (Colleen McMahon, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgments of conviction on all counts and the forfeiture order with respect to Counts One through Six are **AFFIRMED**.[1]

Sandy Annabi and Zehy Jereis appeal from December 14, 2012 judgments of conviction, entered following a six-week jury trial, convicting both defendants on all charges filed against them. They primarily challenge the sufficiency of the evidence on which the jury convicted. Defendants also appeal the forfeiture ordered as part of sentencing. We assume familiarity with the factual and procedural background, and provide only limited details here, mindful that we are required to "view [ ] the evidence in the light most favorable to the government." *United States v. Henry*, 325 F.3d 93, 103 (2d Cir. 2003) (citations omitted) (discussing challenges to sufficiency of evidence).

## BACKGROUND

The May 17, 2011 Superseding Indictment (the "Indictment") charged eleven counts. Counts One through Six relate to an alleged corrupt agreement.[2] The following facts are, in effect, the case that the Government presented, and on which it prevailed.

In 2001, Annabi was elected as a Democrat to the City Council for the Second District of the City Yonkers, and represented that district until 2009. Throughout this period, Jereis, who was chairman of the Republican Party of Yonkers from 2003-2007, gave Annabi nearly $200,000, lent her money, and bought her things of value. In her capacity as Councilwoman, Annabi changed her vote to approve two real estate development projects—Ridge Hill and Longfellow—that she had previously opposed. To prevail at trial, the Government had to prove, beyond a reasonable doubt, that Annabi changed her vote on these projects at Jereis's behest, in exchange for the financial support he had provided, and would provide during her tenure on the City Council. The defense theory, which the jury implicitly rejected, was that Jereis provided financial support because he was

---

[1] We address defendant Sandy Annabi's challenge to the forfeiture ordered with respect to Counts Seven through Nine in a separate precedential opinion issued on the same day as this Order.

[2] The Indictment charged both defendants with: (1) conspiracy to commit bribery, in violation of 18 U.S.C. § 371 (Count One); (2) conspiracy to commit mail and wire fraud by executing a scheme to deprive citizens of Yonkers of the intangible right to honest services, in violation of 18 U.S.C. § 1349 (Count Two); (3) receiving corrupt payments, in violation of 18 U.S.C. § 666 (Count Three); and (4) extortion, in violation of 18 U.S.C. § 1951 (Count Six). Jereis was charged with giving corrupt payments to a public official, in violation of 18 U.S.C. § 666 (Count Four). Annabi was charged with an additional count of receiving corrupt payments, in violation of 18 U.S.C. § 666 (Count Five).

infatuated with Annabi, and that Annabi changed her vote because she obtained concessions from the developers.

Counts Seven through Nine charged Annabi with falsifying mortgage applications for the purchase of three properties—Patton Drive (Count 7); Bacon Place (Count 8); and Rumsey Road (Count 9)—in violation of 18 U.S.C. § 1014. Counts Ten and Eleven charged Annabi with making false statements on her 2005 and 2006 tax returns, in violation of 26 U.S.C. § 7206(1).

On March 29, 2012, the jury convicted on all eleven counts. On November 7, 2012, the District Court denied defendants' post-trial motions for judgments of acquittal, Fed. R. Crim. P. 29, or a new trial, *id.* 33 (the "November 7 Order"). On November 19, 2012, it sentenced Annabi principally to a term of 72 months imprisonment, and Jereis principally to 48 months imprisonment. In addition, the District Court ordered forfeiture. This timely appeal followed.

## DISCUSSION[3]

### A.        Sufficiency of the Evidence

Defendants challenge their convictions primarily on the basis that the evidence was insufficient to support the jury's finding of guilt. We review a challenge to a jury verdict based on sufficiency of the evidence *de novo*, and affirm if "'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Jones*, 393 F.3d 107, 111 (2d Cir. 2004) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), other quotations omitted).

### 1. Counts One Through Six (Corruption Charges)

Counts One through Six charged defendants with various crimes involving the exchange of money in connection with Annabi's decision to change her vote to support two real estate projects that she had previously opposed, as part of a corrupt agreement with Jereis. It is undisputed that Jereis paid Annabi money, and that Annabi subsequently switched her vote on these two projects. The only question is whether there was sufficient evidence of a corrupt agreement, or that the payments at issue constituted bribes.

The District Court recognized that "[t]here was not a scintilla of direct evidence" of an explicit, corrupt agreement between Annabi and Jereis. Jereis App'x ("JA") 293. It concluded, however, that "[t]he jury would not have acted irrationally had it drawn the inference that" the defense's alternative explanation for the exchange of money, and the changed votes, was not credible. *Id.* at 295-304. *See also United States v. Bruno*, 661 F.3d 733, 744 (2d Cir. 2011) (In cases involving government officials, "a jury can . . . infer guilt from evidence of benefits received and subsequent favorable treatment, as well as from behavior indicating consciousness of guilt."). It concluded further that there was sufficient evidence for the jury to conclude that Annabi received money in exchange for her vote on the two development projects. Finally, the District Court

---

[3] Because each defendant joins in the other defendant's arguments on appeal, we treat the arguments as having been made on behalf of both defendants, where applicable.

explained that the three "overt acts" found, unanimously, by the jury—one relating to the Longfellow project; one relating to the Ridge Hill project; and one relating to concealment of payments—were sufficient to convict on Count One (conspiracy to make corrupt payments).[4] JA312-13.

We agree with the District Court, substantially for the reasons stated in its November 7 Order, that the evidence was sufficient for a rational juror to conclude, beyond a reasonable doubt, that the payments Jereis made to Annabi were part of a corrupt agreement, not a romantic relationship, and that there was sufficient evidence as to all the elements necessary to convict on Counts One through Six. Accordingly, we affirm the District Court's judgment of conviction on Counts One through Six.

### 2. Counts Seven Through Eleven (Mortgage and Tax Fraud Charges)

Annabi also challenges the sufficiency of the evidence with respect to her convictions for mortgage fraud, 18 U.S.C. § 1014 (Counts 7-9), and tax fraud, 18 U.S.C. § 7206(1) (Counts 10-11). The District Court found, and we agree, that the evidence, as set forth in the November 7 Order, was "more than sufficient" to support her conviction on these counts.[5] JA313-16. Accordingly, we affirm the judgment of conviction on Counts Seven through Eleven, for substantially the reasons stated in the November 7 Order.[6]

### B. Alleged *Brady* Violation

On appeal, defendants argue that the prosecution failed to timely turn over documents that would effectively impeach a key witness against defendants, in contravention of the rule of *Brady v. Maryland*, 373 U.S. 83 (1963), entitling them to a new trial pursuant to Federal Rule of Criminal Procedure 33. The supposed basis for impeachment was that the Government's principal cooperating witness, Anthony Mangone, committed perjury inasmuch as certain individuals were out

---

[4] Annabi also contends that the jury instruction given regarding the conspiracy charge was misleading with respect to what was necessary to find defendants guilty of the specific conspiracies charged. Annabi raised this concern at the charge conference, and the District Court agreed to address it by including all 26 overt acts charged in Count One on the verdict sheets, and requiring unanimity on at least one overt act. The defense raised no further objections, and the jury unanimously found one overt act as to each charged scheme, and one with respect to concealment. Because defendants raised no objection to the final version of the jury instructions given, or to the verdict form provided to the jury, we will reverse only if the "error is plain, affects a substantial right, and seriously affects the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Middlemiss*, 217 F.3d 112, 121 (2d Cir. 2000) (internal quotation marks omitted). Annabi points to no error in the District Court's charge, nor does she explain how defendants were prejudiced, particularly since the jury found overt acts with respect to each scheme.

[5] Annabi also argues that the District Court erred in admitting into evidence copies of mortgage loan applications, and other relevant statements for the purposes of proving Annabi's mortgage fraud. Admission of copies is proper, where, as here, the originals had been lost, and there was no indication of bad faith on the part of the Government. *See* Fed. R. Evid. 1004.

[6] Jereis also claims that the District Court erred by: (1) admitting certain statements pursuant to Federal Rule of Evidence 803(3) as statements of future intent; (2) admitting expert testimony that the defendants' email files were tampered with, affecting emails sent during the relevant time period; and (3) disallowing cross-examination of a prosecution witness on certain topics. These arguments are without merit.

of the country on the day Mangone claimed that he received money from them. The District Court denied this post-trial motion.

In order to prove a *Brady* violation, "a defendant must show that: (1) the Government, either willfully or inadvertently, suppressed evidence; (2) the evidence at issue is favorable to the defendant; and (3) the failure to disclose this evidence resulted in prejudice." *United States v. Coppa*, 267 F.3d 132, 140 (2d Cir. 2001). Defendants fail to establish the first or third element. While defendants acknowledge that they were in possession of much of the relevant evidence at issue almost two years before trial started, they argue that the prosecution provided insufficient guidance about the significance of the documents produced. With respect to the other evidence allegedly withheld—passports and Department of Homeland Security records—the defense argues that, even though the prosecution did not possess those documents, the Government should have alerted defendants to the witness's mistake or perjury so that the defense could have timely obtained these documents. However, the District Court "accept[ed] that the Government attorneys were unaware of the documents . . . that would prove conclusively" that the relevant witness testimony regarding the receipt of money could not be true, JA 324-25, and there is no evidence to the contrary on appeal. In sum, the Government did what was required of it by the District Court, and by *Brady* and its progeny.

Moreover, because all the relevant evidence was ultimately introduced at trial in time for the jury to assess witness credibility in light of this evidence, Jereis cannot show that he was prejudiced in the manner contemplated by *Brady*. Accordingly, we affirm the judgment of the District Court insofar as it denied defendants' Rule 33 motion for a new trial based on a supposed *Brady* violation.

## C.    Jury Misconduct

After the verdict, an alternate juror disclosed, in letter to the Government, that the jurors had "sp[oken] about the case at lunch . . . ." Annabi Br. 60; Government Special Appendix ("GSA") 1. Defendants argue that this revelation of misconduct, and the District Court's failure to conduct a follow-up inquiry, deprived them of a fair trial. Defendants did not, however, raise this in their post-trial briefs, or request that the District Court conduct an inquiry. Even if they had, a District Court's decision not to conduct the disfavored post-trial inquiry into jury misconduct is reviewed for "abuse of discretion," and should be affirmed absent "incontrovertible evidence that a specific, nonspeculative impropriety has occurred which could have prejudiced the trial." *United States v. Stewart*, 433 F.3d 273, 302-303 (2d Cir. 2006) (internal quotation marks omitted). The letter in question did not suggest that the jurors prematurely deliberated or reached conclusions about the case. To the contrary, the letter at most revealed discussions about the style of lawyering and confusion about certain presentations. Particularly in view of defendants' failure to request that the District Court conduct an inquiry into potential juror misconduct, or to mention this in post-trial motions, the requested reversal on this basis is unwarranted.

5

### D. The Forfeiture Orders (Counts One through Six)

The Indictment sought forfeiture to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, of all property, real and personal, "that constitutes or is derived from proceeds traceable to" the commission of the offenses alleged in Counts One through Six. 18 U.S.C. § 981(a)(1)(C). At sentencing the District Court ordered forfeiture of $209,501.99 as the amount of proceeds obtained directly or indirectly as a result of the violations charged in Counts One through Six, for which both defendants were jointly and severally liable. Defendants challenge these forfeiture orders on statutory and constitutional grounds.[7]

On appeal from a forfeiture award, we review the district court's legal conclusions *de novo* and its factual findings for clear error. *United States v. Treacy*, 639 F.3d 32, 47 (2d Cir. 2011). The Government must prove facts supporting forfeiture by a preponderance of the evidence. *Id.* at 48.

Annabi argues that the $209,501.99 forfeiture order, in connection with Counts One through Six, is excessive because the jury did not find that *all* benefits conferred on Annabi by Jereis were corrupt, *i.e.* for the purpose of obtaining her vote. Specifically, Annabi argues that $119,586.96 was given to her between 2002-2005, well before any allegation that Jereis had requested official action, and $21,829 was given to her between 2007-2008, well after any charged official action. Finally, Annabi argues that $60,000 was lent to her by Jereis in the form of a promissory note, which she repaid, and is not properly included in the forfeiture amount.

Count One of the Indictment charged a corrupt conspiracy from 2002 to 2009, and the jury convicted on that and related counts. The fact that there was not a direct connection between each payment and an official act by Annabi does not place the payments beyond the scope of 18 U.S.C. § 981(a)(1)(C), which authorizes forfeiture of all proceeds traceable to the conspiracy. In convicting on the charges in the Indictment, the jury rejected the defense's alternate explanation for the payments from Jereis and, in so doing, implicitly found that the payments, including loans, were, at least in part, a result of (and therefore traceable to) a corrupt agreement. *See also* Sentencing Transcript, Annabi App'x 1495 ("[T]he minute you[, Annabi,] started to take his money and to do it secretly, by failing to notify your constituents . . . you opened yourself up to the possibility that he would someday ask you to do a favor [and] you would have to do it.").[8]

Jereis argues that he should not be held liable for the $174,501.99 that he paid Annabi for her benefit, and no longer possesses. We have explained that "a court may order a defendant to forfeit proceeds received by others who participated jointly in the crime, provided the actions

---

[7] Insofar as defendants' argue that the forfeiture orders were so disproportional to the gravity of the offenses as to be unconstitutional, that argument is without merit. *See United States v. Bajakajian*, 524 U.S. 321, 336-37 (1998) (discussing standard for finding forfeiture excessive within the meaning of the Eighth Amendment).

[8] The Government argues, and defendants do not dispute, that this is a case of "illegal services [and] unlawful activities" and, accordingly "the term 'proceeds' means property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to forfeiture, and any property traceable thereto, *and is not limited to the net gain or profit realized from the offense*." 18 U.S.C. § 981(a)(2)(A) (emphasis supplied). Therefore, the fact that the $60,000 loan was repaid does not place it beyond the scope of § 981(a)(1)(B).

generating those proceeds were reasonably foreseeable to the defendant." *United States v. Contorinis*, 692 F.3d 136, 147 (2d Cir. 2012). Because Jereis himself was responsible for generating the unlawful proceeds, there is no question that the actions were foreseeable to him. Accordingly, Jereis was properly held jointly liable for forfeiture of the bribes he paid to Annabi.[9]

The District Court did not err in entering the forfeiture order on Counts One through Six, holding defendants jointly and severally liable, as co-conspirators, for $209,501.99.

## CONCLUSION

We have reviewed the arguments on appeal regarding defendants' convictions, and find them to be without merit for the reasons set forth above. The arguments regarding forfeiture on Counts One through Six also fail. Accordingly, we **AFFIRM** the December 14, 2012 judgments of conviction and the orders of forfeiture of $209,501.99 against both defendants on Counts One through Six.

FOR THE COURT,
Catherine O'Hagan Wolfe, Clerk of Court

---

[9] *See also* Note 8, *supra* (proceeds not limited to the net gain or profit realized).